[Civ. No. 2640.    Second Appellate District, Division One.—July 9, 1919.]

RACHEL A. McEWEN, Respondent, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Appellant.

[1] Life Insurance — Action on Policy — False Answers of Insured—Incontestable Clause—Pleading.—Although a policy of insurance may provide that "this policy shall be incontestable after one year from its date of issue, except for nonpayment of premium," if, in an action on such policy, the beneficiary makes no objection to an amended answer pleading the falsity of certain answers given by the insured, such beneficiary may not raise that question for the first time on appeal.

[2] Id.—Right to Change Beneficiary—Vested Interests—Statements of Insured—Conflict With Representations in Appli-

---

1. Incontestability of life insurance under provisions of the policy, notes, 42 L. R. A. 247; 2 L. R. A. (N. S.) 821.

cation—Admissibility.—Where the insured by the terms of the policy reserves the right to change the beneficiary, the latter has no vested interest therein until the death of the insured; therefore, in an action by the beneficiary to recover on such policy following the death of the insured, statements made by the deceased which are inconsistent with the representations made to the insurance company in the application for policy are competent evidence upon the ground of declarations against interest.

[3] Id.—Gift of Policy—Rights of Parties.—A life insurance policy containing a power of revocation and the right to change the beneficiary may be the subject of a gift to the beneficiary named therein, whose interest in expectancy, by virtue of the gift, is changed to an absolute interest without qualification, and thereafter the donor, in the absence of some act again vesting him with title, has no power or control over the policy.

[4] Id.—Contradictory Statements of Insured — Evidence of Gift —Instructions.—Where the beneficiary had made a statement contradictory of a representation contained in his application for insurance, which the court, in the action on the policy following his death, admitted in evidence, and there was some evidence tending to prove the allegation in plaintiff's complaint that the insured had made a gift of the policy to her, the court properly directed the attention of the jury to the fact that it was a declaration made by the insured after the alleged gift of the policy to the beneficiary, which evidence, if they found the allegation as to the gift of the policy to be true, they should disregard, otherwise they should consider it in arriving at their verdict.

[5] Id.—Truth of Representations — Presumption — Conflicting Statements—Finding of Jury—Appeal.—A representation made to an insurance company in connection with an application for insurance must, in the absence of sufficient proof to overcome the presumption, be deemed to be true; and the appellate court cannot say that it is overcome by a statement inconsistent therewith made by the insured where the jury has resolved the conflict in favor of the statement presumed to be true.

[6] Id.—Excessive Use of Liquors—Question for Jury.—Whether or not the insured had used wine, spirits, or malt liquor to "excess" within the meaning of that term as used in an application for insurance is a question of fact for the jury. The meaning of the word "excess" is largely a matter of opinion, depending upon the capacity of the individual and the liberality of view entertained upon the subject by the individual, whose opinion might again be governed by the time, place, and occasion.

[7] Id.—Materiality of Representations — Question of Law for Court.—The giving of an instruction submitting to the jury the question of the materiality of a false answer given by the insured

in his application for insurance with reference to his occupation is erroneous. The determination of the materiality of such representations is a question of law for the determination of the court.

[8] Id.—Accidents Received Since Childhood—False Answer—Evidence—Erroneous Instruction.—In an action on a life insurance policy, it is error to instruct the jury that if they should find that the insured had received certain given injuries, about which there was no conflict in the evidence, but of which the insured made no mention in his application for insurance, and "that the injury was such as it might have a tendency to affect the longevity of the deceased," they should find that the answer of the insured to the question as to what illnesses, diseases, or accidents he had since childhood, was false. The opinion of the jury upon the question as to whether the injury affected his longevity had nothing to do with the truth of his answer.

[9] Id.—Falsity of "Statements" in Application—Instructions—Error.—Error in instructing the jury that their verdict should be for the defendant if they find the "statements" made were false, instead of if they find any one of the statements were false, is without prejudice where the jury finds that all of the statements were true.

[10] Id.—Special Interrogatories — Refusal — Discretion. — Error cannot be predicated upon the refusal of the court to submit to the jury certain requested interrogatories. The court might, in its discretion, refuse to submit any question to the jury for a special verdict.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Reversed.

The facts are stated in the opinion of the court.

Edwin A. Meserve, Shirley E. Meserve and Paul H. McPherrin for Appellant.

Murphey & Poplin for Respondent.

SHAW, J.—On a former appeal had in this case by defendant the judgment in favor of plaintiff was reversed. A second trial was had, which likewise resulted in a judgment in favor of plaintiff, from which, and an order denying its motion for a new trial, defendant has again appealed.

The action was instituted by the mother of Charles B. McEwen, deceased, to recover the amount of an insurance policy on his life, issued by defendant on July 7, 1910,

upon a written application made therefor by deceased on June 29, 1910.

The insured, who was twenty-eight years of age, died on November 20, 1910. Defendant's action in resisting payment of the policy is based upon the alleged ground that the insured procured the issuance of the policy by means of fraud, concealment, and misrepresentations made by him in answer to written questions propounded to him by the defendant, the truth of which answers it believed and upon the faith thereof accepted the application and issued the policy. In the answer to the complaint it is alleged that the answers to the following questions were and are untrue:

"(1) What is your occupation? · (Full details.) A. Proprietor of collection agency.

"(2) How long have you been engaged in your present occupation? A. Ten years.

"(3) What was your previous occupation? A. Cattle business.

"(4a) What is your daily consumption of wine, spirits, or malt liquors? A. No daily habit—occasional beer.

"(4b) Have you at any time used any of them to excess? A. No.

"(6) Have you ever raised or spat blood? A. No.

"(7) What illnesses, diseases, or accidents have you had since childhood? (The examiner should satisfy himself that the applicant gives full and careful answers to this question.) A. Typhoid pneumonia. One attack in 1891; duration two months; severe; complete recovery."

In addition to these questions, the answers to which are alleged to be untrue, defendant, after the first trial and on April 6, 1915, filed an amendment to its answer wherein it alleged that the answers to the following questions were also untrue:

"(8) How long since you consulted or have had the care of a physician? A. 1891; Dr. Thomas, Bucyrus, Ohio.

"(9) If so, for what ailment; name and address of physician? A. Typhoid pneumonia."

At the close of the questions and answers McEwen stated in writing: "I declare, on behalf of myself and of any person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all

of the above answers, that they are each written as made by me, that each of them is full, complete, and true."

In addition to a general verdict in favor of plaintiff the jury rendered special verdicts as to the truth of the answers given to the foregoing questions numbered 1, 4a, 4b, 6, and 7, and also the answers given to questions numbered 8 and 9, referred to as being contained in the amended complaint; each and every one of which answers are conceded by counsel for both parties and the trial court to have been material representations. In response to another question, which we will designate as 10, "What do you find the facts to be with relation to the use of wines, spirits, or malt liquors by the deceased?" they answered: "He was not an habitual drinker. We find no evidence to show that the deceased did indulge in wines, spirits, or malt liquors to excess, prior to application of insurance, therefore said deceased's answers were full, complete, and true."

1. In response to question 8, "How long since you consulted or have had the care of a physician?" McEwen's answer was: "1891; Dr. Thomas, Bucyrus, Ohio"; and in response to question 9, "If so, for what ailment; name and address of physician?" the answer was: "Typhoid fever." The verdict that the answers to these questions were true is attacked by appellant upon the ground that the evidence is insufficient to support the same. The declarations made by the appellant in response to the questions are presumed to be true, and hence the burden was upon defendant to prove the contrary. The only evidence adduced on the part of defendant tending to overcome the presumption so attaching to the answers given by McEwen was the testimony of one Hosick to the effect that McEwen, after an occasion when he was said to have been drunk, told him that he had been under a doctor's care ever since; and the testimony of Dr. Garrett that on August 18, 1909, McEwen stated to him, while acting in the capacity of medical examiner for an accident insurance company, that he (McEwen) was under treatment from Dr. Taylor, which fact of being under Taylor's treatment McEwen also stated in the notice of an injury sustained which he gave to the accident insurance company. It thus appears that in determining the issue all that the jury had before it was the declaration of McEwen made in his application to defendant, to which a

presumption of its truth attached, and subsequent inconsistent declarations therewith made by McEwen. We cannot say that in considering the evidence thus adduced the jury was not warranted in finding the subsequent declarations insufficient as evidence to overcome the presumption of truth attaching to the answers made by McEwen in his application for the policy. [1] In this connection, respondent insists that, even though it should be conceded the answers to questions 8 and 9 constituted material false representations, appellant is in no position to avail itself of the defense based upon such fact, for the reason that the policy provides that ''this policy shall be incontestable after one year from its date of issue, except for nonpayment of premium.'' The alleged false answers to these questions were, by an amendment made to the answer, pleaded as a ground of contest some five years after the policy was issued. No objection, however, was interposed by plaintiff to the filing of the amendment, nor any motion thereafter made to strike it out, nor objection made to the introduction of evidence upon the issue so raised. Hence, if there was merit in plaintiff's contention, she is in no position upon this record, where she appears as respondent, and in the absence of any objection on her part to the proceedings had thereunder, to now for the first time on appeal by her opponent raise the objection.

2. As alleged in the original complaint, plaintiff sought to recover upon the sole ground that she was named as the beneficiary in the insurance policy. [2] Nevertheless, as held on the former appeal (23 Cal. App. 694, [139 Pac. 242]), she, by virtue of such fact, since the insured by the terms of the policy reserved the right to change the beneficiary, had no vested interest therein until his death, and, therefore, statements made by deceased which were inconsistent with the representations to defendant were competent evidence upon the ground that they were declarations against interest. Upon going down of the *remittitur* plaintiff filed an amendment to her complaint the effect of which, if the allegations thereof were found true, rendered the evidence incompetent. This amendment was that in July, a few days after the issuance of the policy, McEwen made a gift thereof to plaintiff, named as beneficiary therein. At the trial, for the purpose of showing the falsity

of applicant's answers to the inquiry as to his use of wine, spirits, or malt liquors, evidence was received showing that on October 22, 1910, in the trial of a case wherein McEwen was charged with committing a criminal offense, he testified in extenuation of the act that he was at the time of its commission intoxicated, and that up to about ten days prior to the giving of the testimony he was a heavy drinker and drank liquor to excess, resulting at times in a condition of prolonged intoxication. Having admitted this evidence, the court directed the attention of the jury to the fact that it was a declaration made by the insured after the alleged gift of the policy to his mother, which evidence, if they found the allegation as to the gift of the policy to be true, they should disregard; otherwise they should consider it in arriving at their verdict.

In so instructing the jury appellant, while conceding that a life insurance policy may be the subject of a parol gift, insists the court committed prejudicial error. Its contention is that, since the donee was named as beneficiary in the policy, with power of revocation reserved to the insured, together with the right to designate a new and different beneficiary, the policy could not be deemed the subject of gift to her, since she took it subject to the provision contained therein that the insured might change the beneficiary; that the purported gift vested her with no right other than what she theretofore had, which was an interest in expectancy only. We are not in sympathy with this ingenious argument. Prior to the alleged gift, the mother named as beneficiary therein had no vested interest in the policy. Her interest was merely one of expectancy and subject to the power of the insured to name another to receive the benefits thereunder. The evidence as to the making of the gift is very meager and entirely consistent with the fair inference that the policy was handed to her as the beneficiary therein named, as the then party interested, for safekeeping only, and not with the purpose or intent of vesting her with a donee's interest or rights other than those which she had as beneficiary. Assuming, however, that the evidence was sufficient to show a gift of the policy was made to the mother, she, by virtue thereof and in addition to her expectancy, acquired an absolute vested interest therein. Notwithstanding the power of revocation reserved in the

policy, he by making the gift surrendered it and divested himself of all right to exercise such power. Had he, after making the gift, substituted the name of his sister for that of his mother, named as beneficiary therein, and at his death a contest arose between the two as to who was entitled to the proceeds of the policy, such contest would involve no question in which the Insurance Company was concerned, and upon trial of the issue between mother and sister the mother, conceding the gift to have been made, could not have been deprived of her rights thereunder because of the fact that the policy contained the power of revocation. In their argument counsel for appellant lay much stress upon the statement of this court made in deciding the case of *Waring* v. *Wilcox,* 8 Cal. App. 317, [96 Pac. 910], which involved the right of the insured to change the beneficiary in a policy which contained a clause similar to the one under consideration. In that case it was found by the trial court that the insured delivered the policy to his mother, named therein as beneficiary, with the intent and purpose that it should belong to her and be her property. Thereafter, at his request, she gave the policy back to him, and he, exercising his right so to do under the terms of the policy, designated another as beneficiary. In the course of its opinion the court said: "Nor can we attach any importance to a finding that the policy was delivered with the intent that it should become the property of the original beneficiary. For it contained the reserved right of substitution and vested no right other than one to receive the benefit in the event the insured did not elect before his death to change the beneficiary. It was a part of the contract, as entered into in the beginning, that the assured, of his own free, unrestrained will, might at any time make the substitution he desired." While in that case the policy had been given to the beneficiary with the intent that it should be her property, it was thereafter by her given back to the insured with the purpose and intent that it should be his property, vesting in him all the rights which he originally had, among which was the right to substitute another as beneficiary. The statement that no importance should be attached to the finding that the policy was delivered to the mother with intent that it should become her property should not be construed of general application, but as ap-

plicable to the facts presented in that case. It cannot be deemed an authority for holding that by reason of the power of revocation and right to change the beneficiary named in an insurance policy, the insured may, after making a completed gift thereof to the beneficiary so named, designate a new beneficiary therein, thus rendering the gift null and of no effect.

[3]   Our conclusion is that an insurance policy containing the provision under consideration may be the subject of a gift to the beneficiary named therein, whose interest in expectancy, by virtue of the gift, is changed to an absolute interest (in the donee) without qualification, and thereafter the donor, in the absence of some act again vesting him with title, has no power or control over the policy. The interest of the donee, though named as beneficiary, is not by virtue of such fact, but the qualified interest is merged in the absolute interest due to the completed gift. [4]   Since there was evidence, though meager, tending to prove the allegation, it was not error on the part of the court to give the instruction of which appellant complains.

3. The only evidence tending to show the falsity of McEwen's answer "No" to question 6, "Have you ever raised or spat blood?" is a statement made by him to Dr. Garrett to the effect that he had, following an injury from being kicked or struck in the chest by the foot of a mule, spat blood.   [5]   The representation made to the Insurance Company must, in the absence of sufficient proof to overcome the presumption, be deemed to be true, and we cannot say that it is overcome by an inconsistent statement therewith made by McEwen. As to the special verdict rendered in response to this question, no ground appears for complaint, since the jury in weighing the inconsistent declarations decided in favor of the one presumed to be true as against one as to which no such presumption existed.

4. In response to question 4a, "What is your daily consumption of wine, spirits, or malt liquors?" the answer was: "No daily habit—occasional beer"; and the reply to question 4b, "Have you at any time used any of them to excess?" was "No." The verdict that the answers to these questions were true is attacked by appellant upon the ground that it is contrary to the evidence, in support of which contention counsel quote extensively from the record.

A review of the voluminous testimony touching the subject could serve no purpose; suffice it to say that as to 4a the question was not whether McEwen had used liquor at all, but assumed as a fact that he did use them. The inquiry is directed solely to the extent of his daily consumption of such beverages. Hence, conceding that, as shown by the evidence, he did at times, varying in intervals of two to four weeks, drink both beer and whisky, such fact is not inconsistent with his answer, "No daily habit—occasional beer." The response made cannot, as urged by appellant, be construed as a representation that he never drank whisky at all; but as we interpret the question and answer, it was simply a statement to the effect that he was not addicted to its daily use.

[6] The reply to question 4b is that he never at any time had used such liquors to excess. No court, so far as we are advised, has undertaken to define what constitutes the excessive use of alcoholic spirits. The cases of *Malicki* v. *Chicago Guaranty Fund Life Society*, 119 Mich. 151, [77 N. W. 690], and *Brignac* v. *Pacific Mut. Life Ins. Co.*, 112 La. 574, [66 L. R. A. 331, 36 South. 595], involved different questions and cannot be deemed authority in support of appellant's contention. The meaning of the word "excess," as here used, is largely a matter of opinion, depending upon the capacity of the individual and liberality of view entertained upon the subject by the individual, whose opinion might again be governed by the time, place, and occasion. (*Clinton* v. *State*, 64 Tex. Cr. 446, [142 S. W. 591]; *Biermann* v. *Guaranty Mut. Life Ins. Co.*, 142 Iowa, 341, [120 N. W. 963].) In the absence of any standard of measurement, the question is one of fact to be determined by the jurors, whose conclusion, as stated, would depend largely upon their views as to what constitutes excess in the use thereof. It cannot be determined upon the quantity used, because of the fact that an amount which might affect one individual would not be noticeable upon another. The most of the testimony bearing upon the question was given by witnesses from Daggett, near which place it appears deceased was engaged in the operation of a mine and from which he, from two to four weeks, went to Daggett, at which times he concededly drank more or less whisky and beer. There is little testimony touching the quantity of

his libations. Apparently he did not drink sufficiently to interfere with his transaction of business, and it fairly appears that there was a conflict of evidence as to the effect upon him of that which he did drink. Under the circumstances shown, we cannot say that the jury, upon the testimony as to his habits of drinking at Daggett, were not justified in their verdict that he did not drink to excess. It appears from the testimony of two witnesses, James Hosick, a police officer of the city of Los Angeles, and a Mrs. Skinner, that McEwen did drink to an extent that resulted in his being drunk, and both of them go into details as to one particular occasion. As to the testimony of these two witnesses, the court instructed the jury that if they believed the same, they should find that the applicant's answer to the question was false, but instructed them that the one particular instance referred to would not necessarily justify a verdict that the answer was false; that as to that, if they found their evidence true, they should consider whether or not it was a voluntary intoxication or an incident where others who were with him succeeded in getting him intoxicated for purposes of their own, in which case they should not consider such act alone as justifying a finding that his answer was false, but that "if you find from the evidence . . . that the deceased was in the habit of using wine, spirits, or malt liquors, and that had persisted for some time, and that he had on more than one occasion used them to excess, then you should find that the representations herein are false." This last instruction was certainly as fair as defendant could ask, and it is apparent from the verdict that the jury did not believe the testimony of Hosick and Skinner as to repeated acts of drunkenness on the part of McEwen to which they testified. We cannot say the conclusion of the jury that the answers of McEwen to questions 4a and 4b are not justified by the evidence.

5. In answer to questions 1 and 2 McEwen stated that he was proprietor of a collection agency, in which business he had been engaged for ten years. These questions called for full details, and considering the sufficiency of the evidence to justify the verdict, we must bear in mind that McEwen certified that "I declare, on behalf of myself and of any person who shall have or claim any interest in any insur-

ance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete, and true, . . ." At the date of making the application for the insurance, McEwen's chief business appears to have been that of mining. According to plaintiff's testimony, he went to New Mexico in 1904 and was there about a year, and in 1906 he went to Old Mexico, where he was engaged in the brick business and a part of the time in mining. When he returned from Old Mexico in 1906, he engaged in mining near Daggett, and a part of the time prospecting near Fallbrook. He continued in the mining business near Daggett until July, 1909. The evidence shows that he never had an office and was not connected with a collection agency; and while there is some evidence that he made collections for his father, a groceryman, and at times for others in a desultory way, it could in no sense be said that he was or had been for ten years engaged in such occupation. Indeed, it clearly appears from the evidence that he not only was not the proprietor of a collection agency in any sense of the term, but that during the ten years preceding the making of the application, and particularly from 1904 to July, 1909, he was engaged largely in mining and business other than that of collecting. [7] In arriving at its verdict upon the answer given to this question, the court instructed the jury that it was to determine whether or not the statement made was substantially true. "By substantially true does not mean somewhat true, partially true, on the one hand, nor does it mean true in every possible and immaterial respect on the other. It means true without qualification in all respects material to the risk." Considering the character of this evidence, we think it apparent that the jury under the instruction, believing it was its province to determine whether or not the representation was true "*in all respects material to the risk,*" determined that it was immaterial, and, therefore, notwithstanding the falsity of the answer shown by the evidence, rendered their verdict upon such theory. The court did not as to this question, as it did in others, determine the question of the materiality of the answer, but by this instruction clearly submitted to the jury the question of its materiality. The giving of the instruction as to this question was erroneous,

since, as stated on the former appeal, "the materiality of the representations was a question of law for determination of the court and not the jury."

[8    6. In response to question 7, "What illnesses, diseases, or accidents have you had since childhood?" McEwen answered: "Typhoid pneumonia; one attack in 1891; duration two months; severe; complete recovery." It conclusively and without contradiction appears from the evidence that in July, 1909, just a year prior to making the application for the policy, McEwen, at his mine near Daggett, was injured by being struck or kicked in the chest by the foot of a mule, as a result of which his back was strained and one rib broken; that owing to total disability caused by the injury, he received from an accident insurance company the sum of $25 per week for a period of sixteen weeks, amounting in all to four hundred dollars. The character of the injury was such that it completely rendered him unfit for doing any business whatsoever; that he raised purulent matter and stated to Dr. Garrett that he spat blood, the cause of which, as stated by McEwen and determined by the doctor, was the injury received in this accident, the effect of which was for a time to seriously impair his health. The question not only called for a statement of diseases from which he had suffered since childhood, but as well accidents to which he had been subjected and from which he had suffered. The answer was in effect that he had had no accidents. Notwithstanding the serious nature of the injury suffered from this accident, which disabled him for a period of nearly four months, he concealed from the company all knowledge thereof, the effect of his answer being that he had suffered no such injury from the accident as that shown. That the information was material and suppressed in bad faith admits of little doubt. (*Metropolitan Life Ins. Co.* v. *McTague,* 49 N. J. L. 587, [60 Am. Rep. 661, 9 Atl. 768]; *Metropolitan Life Ins. Co.* v. *Brubaker,* 78 Kan. 146, [130 Am. St. Rep. 356, 16 Ann. Cas. 267, 18 L. R. A. (N. S.) 362, 96 Pac. 62]; *Bryant* v. *Modern Woodmen of America,* 86 Neb. 372, [21 Ann. Cas. 365, 27 L. R. A. (N. S.) 326, 125 N. W. 621]; *McCollum* v. *New York Life Ins. Co.,* 124 N. Y. 642, [27 N. E. 412]; 3 Cooley's Briefs, p. 2109; Civ. Code, secs. 2561, 2579.) The trial judge appears to have recognized the facts con-

cerning the accident were undisputed. It is impossible to reconcile the verdict of the jury, to the effect that the answer to this question was true, save and except upon the theory that the injury sustained at the time, however severe and serious in character it may have been, did not, in the minds of the jurors, tend to increase the risk assumed by defendant in insuring McEwen's life. This conclusion, no doubt, was due to an instruction given by the court, which we deem clearly erroneous. The court, after referring to the accident which the evidence established, stated to the jury: "No mention is made of this by the deceased in this application. If you find from the evidence that the deceased was struck or kicked by a mule and that as a result of the injury so received he was disabled for a number of weeks, and unable to continue his occupation from July 2, 1909, to August 26, 1909, that he was not able to continue in his occupation during that period, that the injury was such as it might have a tendency to affect the longevity of the deceased, then you will find that the answer to that question was false." In view of the uncontradicted evidence, it is impossible to conceive of the jury reaching the verdict rendered except upon the hypothesis that the accident and resultant injury therefrom did not "*have a tendency to affect the longevity of the deceased.*" Not only was the instruction erroneous, but it was clearly prejudicial to defendant, in that except for it the verdict must, upon the evidence, have been a negative answer. The opinion of the jury upon the question as to whether the injury affected his longevity had nothing to do with the truth of the answer. By asking the question as to accidents the company fixes its estimate of its importance and the applicant agrees thereto. Had the answer been true, the information would have afforded means for the company to determine whether the life of one so injured was a desirable risk. "It would be a violation of the legal rights of the company to take from it its acknowledged power, thus to make its opinion the standard of what is material, and to leave that point to the determination of a jury." (*Jeffries* v. *Economical etc. Ins. Co.*, 22 Wall. 47, [22 L. Ed. 833, see, also, Rose's U. S. Notes]; *Hubbard* v. *Mutual etc. Assn.*, 100 Fed. 726, [40 C. C. A. 665].) Certainly, considering the nature of the injury sustained by the appli-

cant, the information was material to the company, and it may well be that had the company received information from the applicant that within the year he had sustained injuries to his chest, resulting in one rib being broken, his back strained, and as a result of which he spat blood and purulent matter, and on account of which he received from an accident insurance company $25 per week for a period of sixteen weeks, it would not have assumed the risk upon his life. Indeed, it may be that the injury thus received was the latent cause of his death. For this error, if for no other, we feel that the judgment and order should be reversed.

[9] 7. Appellant complains of the fact that the court throughout the instructions told the jury that their verdict depended upon whether or not they found the *"statements"* made were false; whereas the court should have instructed the jury that if they found any one of the statements false, their verdict should be in favor of the defendant. Since, however, the jury found all of the statements true, the defendant could not have been prejudiced by reason of the instruction given, even if it be conceded erroneous.

[10] 8. Since the court might in its discretion have refused to submit any questions to the jury for a special verdict, no error can be predicated upon the fact that the court refused to submit to the jury certain interrogatories requested by the defendant. (Code Civ. Proc., sec. 625; *Pigeon* v. *Fuller,* 156 Cal. 691, [105 Pac. 976].)

There are other alleged errors, but in view of what has hereinbefore been said, we deem it unnecessary to discuss them.

For what we conceive to be errors, herein discussed under subdivisions 5 and 6, the judgment and order denying defendant's motion for a new trial are reversed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 4, 1919.

All the Justices concurred, except Wilbur, J., who did not participate.