[Civ. No. 5353. Third Appellate District.—October 17, 1935.]

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK (a Corporation), Plaintiff, v. CORAL LA FONTAINE FRANCK, Respondent; BEULAH FRANCK, Appellant.

530

W. H. Douglass and John M. Atkinson for Appellant.

Bicksler, Parke & Catlin and W. G. Dannelson for Respondent.

THOMPSON, J.—The defendant and cross-complainant Beulah Franck has appealed from the judgment rendered against her in a suit to determine the right and title to the proceeds of an endowment policy.

Albert J. Franck and the respondent Coral La Fontaine Franck were married July 13, 1917. They established their home in Nevada. Two fifteen-year endowment life insurance policies numbered 2658767 and 2658771, respectively, for the sum of $5,000 each were issued to him October 22, 1919. The annual premium on each policy was the sum of $348.80. His wife Coral was named as beneficiary in each of these policies. During their married life the premiums thereon were paid from their community property. In 1921 domestic trouble arose between them on account of which they executed an agreement settling their property rights by the terms of which he promised to pay his wife in the event of a divorce the sum of $250 per month as alimony and covenanted to make her the sole, irrevocable beneficiary of the policies above mentioned. The policies were then delivered to the respondent. These covenants were conditioned upon her remaining unmarried. The respondent never remarried.

February 14, 1921, upon proceedings duly had in the District Court of Nevada a decree of divorce was rendered by that court in favor of the respondent in which she was awarded $250 per month alimony, together with title to the proceeds of both insurance policies. This decree directed that Albert J. Franck should constitute his wife sole, irrevocable beneficiary of both policies and pay all premiums thereon. This divorce became final. July 5, 1923, without the knowledge or consent of the respondent, contrary to the provisions of the agreement settling their property rights and in violation of the decree of divorce, Mr. Franck purported to change these policies so as to constitute his executors, administrators and assigns the beneficiaries thereof.

October 19, 1923, Mr. Frank borrowed from the appellant Beulah Franck (then Wheeler) the sum of $348.80 to pay

the annual premium on Policy No. 2658767. The insured thereafter defaulted in the payment of premiums on both policies, whereupon the duration of each policy was automatically extended pursuant to the terms of the contracts so as to keep them in force. Both insurance policies remained in force until the time of the death of the insured, obligating the insurance company to pay the lawful beneficiary thereof the principal sums due.

June 14, 1924, Albert J. Franck and Beulah Wheeler, this appellant, were married. November 26, 1926, without the knowledge or consent of the respondent, Coral Franck, the insured purported to change the beneficiary of these policies contrary to the terms of the agreement settling property rights and of the decree of divorce and designated this appellant as beneficiary thereof. The insured wrongfully procured the policies and delivered them to the appellant. December 31, 1931, Albert J. Franck died, leaving the policies in full force and effect. Both the appellant and the respondent thereupon demanded of the plaintiff insurance company the proceeds due under the terms of these policies. The Mutual Life Insurance Company of New York then commenced this action against the respondent and the appellant paying into court the proceeds of the policies and asking the court to determine their respective rights thereto and that plaintiff be discharged from further liability under the contracts. The appellant and the respondent filed separate answers and cross-complaints in this action. The demurrer of the appellant to the cross-complaint of the respondent was overruled. September 12, 1932, on motion of the appellant, judgment on the pleadings was rendered against the respondent with respect to Policy No. 2658771. No appeal therefrom was perfected and that judgment became final.

This suit was tried by the court on the remaining issue regarding the title to insurance Policy No. 2658767 for the sum of $5,000. Findings were adopted favorable to the respondent and judgment was rendered in favor of the appellant for the reimbursement of the annual premium which was paid by her, as hereinbefore mentioned, in the sum of $348.80. Judgment was rendered in favor of the respondent for the balance of the proceeds of the last-mentioned insurance policy in the sum of $4,666.45. From this judgment the defendant Beulah Franck has appealed.

The appellant contends that the court erred in overruling her demurrer to the respondent's amended cross-complaint; that the judgment and findings are not supported by the evidence, and that the Nevada decree of divorce is incompetent as proof of title to the proceeds of the insurance policy for the reason that it has not been reduced to a judgment in a California court.

The appellant also assigns as erroneous the order of the court denying her motion for a new trial. ■ It has been frequently held that an appeal does not lie from an order denying a motion for a new trial. (*Nordin* v. *Eagle Rock State Bank,* 139 Cal. App. 584, 589 [34 Pac. (2d) 490] ; sec. 963, Code Civ. Proc.) The notice of appeal from that order is therefore ineffectual.

■ The demurrer to the respondent's cross-complaint was properly overruled. It is contended the amended cross-complaint of the respondent fails to state a cause of action for the reason that it appears therefrom that the insurance policy was not "in full force and effect", and that the California court was without jurisdiction to render judgment determining title to the proceeds of the policy since the Nevada decree of divorce has not been reduced to judgment in this state. This cross-complaint alleges the marriage of the respondent with Albert J. Franck and his subsequent procuring of the insurance policies in question in which she was named as beneficiary; that domestic trouble arose between the spouses and that in contemplation of a future divorce they had an agreement settling their property rights which, among other things, stipulated that the insured would constitute the cross-complainant sole, irrevocable beneficiary of these policies; that a decree of divorce was thereafter awarded to her by the Nevada court, in which she was granted alimony in the sum of $250 per month, and the defendant was directed to make and retain her as sole, irrevocable beneficiary of the policies according to the terms of the contract, but that, contrary to the agreement and to the provisions of the decree of divorce, and without the knowledge or consent of the cross-complainant, the insured did purport to change the beneficiary of these policies in an attempt to deprive her of her vested interest therein. The prayer then asked for a decree declaring her to be the owner and entitled to the proceeds of Policy No.

2658767 which is involved on this appeal. Paragraph III of this pleading is in the following language:

"That on or about . . . February 14th, 1921, this cross-complainant and Albert J. Franck entered into a property settlement by the terms of which, among other things, it was agreed that said Albert J. Franck was to constitute and make this cross-complainant an irrevocable, sole beneficiary under said policies of insurance and that it was further agreed that this cross-complainant as of that date would have a vested and definite right and interest in and to said policies of insurance and that at no time would said Albert J. Franck cause any change to be made in the beneficiary in any of the policies; that this cross-complainant relied and depended upon said property settlement and agreement and that she was to be the irrevocable, sole beneficiary in said policies and surrendered valuable property rights to said Albert J. Franck because of such reliance."

The cross-complaint of the respondent sufficiently alleges that she has a vested equitable interest in the proceeds of Policy No. 2658767 by virtue of the agreement settling property rights independently of the determination of the Nevada decree of divorce. But it is alleged that the divorce decree also vested her with an equitable interest in that policy by providing that "said plaintiff shall irrevocably be made the sole beneficiary under said policies". It has been determined that while a named beneficiary of a policy which provides for a change thereof by the insured, secures only a contingent interest therein, a subsequent agreement of the insured in consideration of a settlement of property rights in contemplation of a divorce by the terms of which he covenants to make her sole, irrevocable beneficiary of the policy, vests her with an equitable interest therein which may not be defeated without her consent. (*Shoudy* v. *Shoudy*, 55 Cal. App. 344, 352 [203 Pac. 433]; *McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133, 141 [183 Pac. 373].) The facts of the Shoudy case were very similar to those which appear in this proceeding, except that the decree of divorce did not direct that the wife should be made the irrevocable beneficiary. The insurance policy was not mentioned in the Shoudy decree. It appears in that case that, pending the divorce proceedings, the insured wrote a letter to his sister saying: "Referring to our conversation settlement between Mrs. Shoudy and myself you

are at liberty to say to her, . . . She will have an alimony as long as Ruth is with her of $125.00 per month. . . . I have a policy in the Bankers Life Association, $4,000.00, which I will keep in effect for her as long as she remains single.'' It does not appear that the decree approved or adopted this agreement. But the decree awarded the wife alimony upon the same terms stipulated in the agreement and failed to mention the policy or the contract to make her the irrevocable beneficiary thereof. After the divorce was granted Mr. Shoudy wrote to the insurance company saying, ''This is to advise that we have just been divorced a few days ago, and I agreed to keep these (policies) in force for her until she may remarry.'' The company notified him there was no necessity for a change in the policy. Regarding the effect of the property settlement agreement in that case the court said:

''When Dexter Shoudy, in anticipation of the divorce between himself and his wife, offered as one of the terms of settlement of their property rights 'to keep in effect for her as long as she remained single' said policies, and when this offer was accepted by her the quality of her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of the insured in changing the name of the beneficiary.''

There is nothing in this cross-complaint to indicate that the policy in question was not in full force and effect at the time of the death of the insured. Neither the fact that some person other than the insured paid one of the annual premiums on the policy, nor the fact that the insured wrongfully attempted to thereafter change the beneficiary contrary to his agreement, destroyed the validity of the policy nor avoided the binding effect of the agreement.

The cross-complaint of the respondent therefore states a good cause of action, and the demurrer thereto was properly overruled.

The appellant contends that the evidence fails to support the findings of the court to the effect that the respondent acquired a vested interest in the proceeds of the policy either by virtue of the agreement settling the property

rights or by the decree of divorce which was rendered. The court specifically found that:

"It was mutually agreed that the decedent would pay to Coral (the respondent) the sum of $250.00 per month as alimony for her life unless she remarried and that he further would constitute and make her the irrevocable and sole beneficiary in and to said policies of insurance and that she would have the sole, full and complete right to the proceeds thereof upon his death unless she remarried."

The court also separately found that the decree of divorce was awarded to the respondent together with alimony in the sum of $250 per month while she remained unmarried and that the decree also directed the defendant to make the respondent sole irrevocable beneficiary of the policies, although the decree did not specifically approve or adopt in terms the former property agreement. But it was unnecessary for the decree to formally adopt the terms of the property agreement. The contract itself was sufficient to irrevocably vest the beneficiary with the interest in the policies. That is precisely what the Shoudy case holds. The evidence in support of the findings that the agreement was made as above related is not as definite or conclusive as it might have been. However, the recitations of the decree in that regard are in almost the exact language which was employed in the former agreement. It is apparent the respondent relied chiefly on the terms of the decree of divorce to establish her claim of title to the policy in question. Nevertheless, there is substantial evidence to support the finding that the agreement was made. Coral Franck testified in that regard: "Q. . . . You finally settled upon accepting the $250.00 per month alimony and being made the irrevocable beneficiary in the two policies of insurance? A. That was it. Because I was entitled to a share of the community property, on property that he had. Q. After this decree of divorce was obtained, what if anything was said or done with regard to these policies of insurance? A. Well, I had them. Q. How did you get them? A. Well, that was the arrangement—I had them—and I had with him that arrangement. Q. You mean, upon the obtaining of the decree, the policies were delivered over to you? A. Yes."

The decree, which is in evidence, provides in unequivocal language that the respondent was to be made sole, irrevocable

beneficiary of the policies. These findings are adequately supported by the record.

■ We are of the opinion it is immaterial whether the premiums on the insurance policies were paid from the community funds of the respondent and her husband or from his separate property. By agreement he was to keep up the payments of premiums on these policies. There is evidence to support the findings of the court that subsequent to the divorce and after the marriage of Mr. Franck and the appellant she loaned him large sums of money, and that prior to their marriage she loaned him the sum of $348.80 for the purpose of paying one annual premium on this policy. But the judgment reimbursed her for that particular amount, and on her motion she was given judgment on the pleadings for the proceeds of Policy No. 2658771. There is evidence that, except as above stated, the premiums on these policies were paid from the community funds of the respondent and her husband until the time of the divorce, after which the obligation to pay the premiums, by agreement, rested on the insured.

■ The appellant asserts that the findings of court are in irreconcilable conflict by determining that the respondent was given a vested interest in Policy No. 2658767, and upon the contrary:

"That on or about November 26, 1926, the insured *without any right* and without the will, permission or consent of Coral, changed the beneficiary in said policy to Beulah and made a gift thereof to her."

We are of the opinion these findings are not in conflict. The language of the preceding finding may be construed to mean that a lawful gift of the policy was not made to Beulah, but that, in conformity with other findings, he vested the title thereto in the respondent by delivering the policy to her with the promise to make her sole, irrevocable beneficiary thereof. The evident meaning of the foregoing finding is that the insured, in violation of his contract, wrongfully, "without any right" so to do, changed the beneficiary and delivered the policy to his wife Beulah. This was an unlawful breach of his contract and therefore void.

■ It is true, as the appellant contends, that the interest of a beneficiary in a policy which authorizes a change thereof is not ordinarily a vested right but on the contrary merely an

expectancy of an inchoate gift which may be consummated upon the death of the insured, but which is revocable at the option of the insured during his lifetime. (*Blethen* v. *Pacific Mutual Life Ins. Co.*, 198 Cal. 91, 98 [243 Pac. 431] ; *McEwen* v. *New York Life Ins. Co.*, 42 Cal. App. 133 [183 Pac. 373].) But the insured may waive his right to change the beneficiary and by contract he may convert the contingent interest in the policy into a vested equitable interest which may not be subsequently defeated by an effort to change the beneficiary without his consent. (*Shoudy* v. *Shoudy, supra.*) The insured may make an absolute gift of the policy to the beneficiary, as the court found that he did in this case. In the case of *Lo Presti* v. *Manning*, 125 Cal. App. 442, 445 [13 Pac. (2d) 1002], the court said:

"While a life insurance policy may be made the subject of a gift, and the beneficiary to whom the gift has been made may acquire a vested interest therein, such transaction must meet all the requirements of the law in regard to the making of a gift. A verbal gift is not valid unless the means of obtaining possession or control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee." (Sec. 1147, Civ. Code.)

In the present case the insured, for a valuable consideration, not only agreed to make the respondent sole, irrevocable beneficiary of the policy, but he also delivered the documents to her. The fact that he subsequently procured the policies and wrongfully changed the beneficiary and delivered them to the appellant did not confer title upon her, for he was powerless to thus deprive the respondent of her vested right therein. The court found he did this "without any right" so to do. The findings are not conflicting in that regard.

█ The appellant contends that the court erred by failing to find in accordance with the evidence that the insured gave the policies to the appellant by making her the beneficiary thereof and delivering the instruments to her. The omission is harmless. It is apparent that specific findings on that subject would be adverse to the appellant. A failure of the court to adopt findings upon an issue raised by the answer is not reversible error, when the finding, if made to support the judgment would necessarily be adverse to the appellant. (*Jianou* v. *Pickwick Stages System*, 111 Cal. App. 754, 758 [296 Pac. 108] ; 2 Cal. Jur. 1033, sec. 614.) More-

over, in effect, this issue was found adversely to the appellant. Finding IX, heretofore referred to, determines that the insured wrongfully changed the beneficiary named in the policies before he gave them to the appellant. This would necessarily mean that the purported gift to her was void. In finding XIII the court determined that while it was true the appellant had possession of the policies at the time of the death of the insured, "it is not true that she was the sole owner of said policy or that she had any right or interest therein". The omission to more specifically adopt findings on that issue is not reversible error.

 The admission in evidence of the Nevada decree of divorce is assigned as reversible error for the asserted reason that it is incompetent, not having been first reduced to judgment in this state.

We are of the opinion there is no merit in this contention. This is not a suit to enforce the Nevada decree of divorce. It is a suit to determine the title to the proceeds of an endowment policy which funds are in the custody of the California court from which this appeal emanates. The authenticated copy of the Nevada decree was received in evidence to support the respondent's claim of title. While its terms may not be enforced by contempt proceedings or by process without the state of Nevada, under article IV, section 1, of the federal Constitution which guarantees "full faith and credit" to judicial proceedings in every other state, it becomes competent evidence of the determination of that court with respect to the disposal of the property rights of the spouses as an incident to the divorce proceeding. It is said in 3 Freeman on Judgments, fifth edition, page 2936, section 1425:

"It may be laid down as a general rule that a decree of divorce rendered in one state or territory is entitled to full faith and credit, under the Federal Constitution, in every other state and territory under the same circumstances and subject to the same limitations as any other judgment."

The judgment of a court in a sister state, having jurisdiction of the persons and property involved in the litigation is competent evidence in a proper proceeding in another state of the issues necessarily determined thereby. In 4 Jones Commentaries on Evidence, second edition, page 3497, section 1879, it is said regarding this subject:

"It is elementary that neither a judgment nor a decree can be directly enforced beyond the state in which it was entered. The effect of process thereon is restricted to the state in which it was issued; and the benefit of a judgment or decree, outside of the state in which it was pronounced, can be secured only by some action thereon, or by presenting it as a defense in some action, *or by offering it in evidence* to control the determination of the same issue upon which it is relevant."

■ It is true that the effect of a judgment in a sister state may be rebutted by proof that the court which rendered it was without jurisdiction of the persons or property involved. (*Estate of Hancock,* 156 Cal. 804 [106 Pac. 58, 134 Am. St. Rep. 177]; *Carlton* v. *Miller,* 114 Cal. App. 272 [299 Pac. 738].) ■ But the jurisdiction of the Nevada court is not challenged in this case. The parties to that divorce proceeding were *bona fide* residents of that state. Both of them appeared in that action. It must be presumed that court had jurisdiction of both the persons and the property which it assumed to dispose of. A decree of divorce rendered by a court of a sister state, which appears to be regular on its face, is entitled to the presumption that it is valid. In the absence of proof to the contrary, it will be assumed that the court which renders such a decree is invested with jurisdiction of the persons and the property affected thereby. (*Delanoy* v. *Delanoy,* 216 Cal. 27, 37 [13 Pac. (2d) 719, 86 A. L. R. 1321]; 34 C. J., p. 1140, sec. 1615.) We therefore assume that the objection to the introduction of the Nevada divorce decree in this proceeding was properly overruled, and that it is competent evidence of the disposal by that court of the policy in question of which it had jurisdiction.

The familiar case of *Haddock* v. *Haddock,* 201 U. S. 562 [26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1], relied upon by the appellant in her challenge to the application of the principle of the "full faith and credit" clause of the federal Constitution, is not controlling in this case, for the reason that substituted service upon the defendant in this divorce proceeding is not involved as it was in that case. That opinion was rendered, as the syllabus indicates, on the theory that the judgment of divorce of a sister state when jurisdiction of the defendant is procured only by constructive service, and he does not appear in the case, is not entitled to full faith and credit under the constitutional guaranty. To that de-

cision a very formidable dissenting opinion was rendered by Justices Harlan, Holmes, Brewer and Brown. The syllabus of the prevailing opinion of the court reads:

"The mere domicil within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action."

This opinion was based on the theory that there was a defect of jurisdiction on account of constructive service and the failure of the defendant to appear or answer the complaint, which distinguishes such a judgment from one which is rendered in a case based upon personal service of the defendant. The rule which is announced in the Haddock case has not been extended so as to deny the application of the full faith and credit clause under the circumstances which exist in this case where both parties were before the court which had jurisdiction of the persons and the property involved. We are of the opinion the Haddock case had no application to the present case in that regard.

Assuming, however, without so deciding, that the authenticated copy of the decree of divorce in the Nevada case was not competent proof of the disposition of the policy in question or of the vested right of the respondent thereto, its admission is harmless for it is merely cumulative of the oral evidence heretofore quoted to the effect that the proceeds of the policy were vested in the respondent by the terms of the previous agreement settling their property rights. If the divorce decree be deemed to be incompetent as evidence in this case, still there is adequate testimony to support the findings and judgment to the effect that the respondent is vested with an interest in the policy in question and that she is entitled to the proceeds thereof.

Finally it is contended this suit is barred by the statute of limitations of both Nevada and this state, and by laches for failure to prosecute this action for more than six years after the rendering of the Nevada judgment of divorce. We are of the opinion this suit is not barred by laches nor by statutory limitation for the reason that this action is not based on the Nevada judgment. The statute of limitations

of the state of Nevada upon which the appellant relies is very similar to section 336 of the California Code of Civil Procedure which she also cites as a bar to this action. The last-mentioned section provides that: "An action upon a judgment or decree of any court of the United States or of any state within the United States" must be commenced within five years of the rendition of the judgment. The Nevada statute requires such an action to be commenced within six years. These statutes are not applicable for the reason that this action is not founded on the Nevada judgment. On the contrary, it is based on the fraud of the insured in wrongfully changing the beneficiary of his policies and attempting to transfer them to the appellant contrary to his agreement with the respondent. This breach of contract was not discovered by the respondent until the death of the insured in December, 1931, which was little more than one year before the commencement of this action.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.