[Civ. No. 12214. First Dist., Div. One. Apr. 16, 1943.]

JEREMIAH J. MAHONY, Appellant, v. DORIS G. CROCKER et al., Respondents.

.A. B. Bianchi and Augustin Donovan for Appellant.

Henry F. Boyen and Frank J. Fontes for Respondents Doris G. Crocker and Marjorie Catherine Mahony.

Chickering & Gregory and Stephen R. Duhring for Respondent Crocker First National Bank.

PETERS, P. J.—Jeremiah J. Mahony appeals from a judgment rendered in an action brought by him to quiet his title to two insurance policies on his life containing provisions for both death and disability payments. He sought a determination that his former wife, now Doris G. Crocker, his daughter, Marjorie Catherine Mahony, and the Crocker First National Bank of San Francisco have no interest in these policies. The Equitable Life Assurance Society of the United States, one of the insurers, filed a complaint in intervention asking a determination of the status of its policy, and the Aetna Life Insurance Company sought similar relief by its answer to the cross-complaint in intervention. The trial court determined that plaintiff had no rights in either the death or disability benefits of the policies other than were limited to him by virtue of certain declarations of trust covering the proceeds of the policies, which had been previously executed by him, and enjoined him from attempting to change the beneficiary from the Crocker First National Bank of San Francisco, as trustee, to his present wife, Helen G. Mahony.

There are two main issues presented on this appeal. First, has appellant lost the power to change the beneficiary in the two policies from the trustee, the Crocker bank, by reason of his having executed irrevocable trusts of the proceeds, and second, if such trusts have been validly created in form, did the trial court erroneously exclude evidence that they were

executed as gifts *causa mortis*? Appellant urges that, so far as the death benefits are concerned, there was only a naked declaration of trust without assignments, and that, so far as both the death and disability benefits are concerned, even if the trusts were valid in form, they were created *causa mortis* and may be revoked by him.

The facts are as follows: Prior to 1924 appellant was married to respondent Doris G. Crocker. There was one child, the issue of such marriage, respondent Marjorie Catherine Mahony. In 1924 appellant secured the two policies in question, one with the Equitable Life Assurance Society of the United States, and one with the Aetna Life Insurance Company. Each policy has two major benefits as part of the contract, one a death benefit in the sum of $25,000, and the other a disability benefit carrying a monthly payment of $250 during disability. If disabled, each policy provides for a waiver of premium. Each policy was purchased out of separate funds of appellant. In 1925 appellant became disabled, within the meaning of the policies, and began to receive disability benefits. Early in 1929 appellant and respondent Doris G. Crocker separated, and in June of 1932 respondent secured a final decree of divorce from appellant, the decree awarding her no alimony or support for their child. The custody of the child was awarded to her. A short time later in the same year she married Crocker. In 1936 appellant married Helen G. Mahony, his present wife, and the person he wants to substitute as beneficiary of the policies.

Both policies contain the usual provisions that the insured has the right to change the beneficiary upon written request to the company provided that there has been no written assignment of the policy on file with the company.

In July of 1930 appellant, by written assignment filed with the company, assigned the disability and death benefits of the Equitable policy to his then attorney Frank O'Connell, as trustee. In November of 1930 appellant made a similar assignment of the death and disability benefits of the Aetna policy to O'Connell, as trustee. According to the terms of the O'Connell trust, the trustee was to collect all payments made on the policies and pay one-half thereof to respondent Doris G. Crocker then the wife of appellant, but living separate and apart, and one-half to be expended by O'Connell for the

benefit of appellant. On November 30, 1932, O'Connell, in writing, reassigned the two policies back to appellant.

Prior to the reassignment by O'Connell, and while the policies were still subject to the O'Connell trust, on October 22, 1930, appellant executed a declaration of trust by which the death benefits of the two policies were to go to the Crocker bank, as trustee, and by it to be disbursed as provided in the trust agreement. The document recites that it is "between Jeremiah J. Mahony and Doris G. Mahony, his wife, hereinafter referred to and called the 'Trustors' " and the Crocker bank as trustee, and that the trustors have caused the trustee to be named as beneficiary of the two life policies. It provides that the trustee shall collect all the proceeds of the two policies and pay the net income to Doris G. Mahony until the termination of the trust; that if Doris shall die before the termination of the trust the net income shall be paid to Marjorie Catherine Mahony until the termination of the trust; that if both Doris and Marjorie be then living the trust shall terminate January 2, 1954, and any proceeds of the policies then in the hands of the trustee shall be paid to Doris, and, if she has died, to Marjorie; that if both Doris and Marjorie die prior to that date, upon the death of the survivor the trust shall terminate and the trust property shall then vest in Jeremiah, if living, or, if not living, then in the living issue of Marjorie, and, if none, to go to her heirs at law. The trustee is authorized to use the corpus of the trust for the benefit of either Doris or Marjorie in an emeregncy. The trust is expressly declared to be irrevocable and not subject to modification by any person. It is provided that the "policies shall not be assigned, pledged or used for any purpose other than that herein provided, nor shall the beneficiary thereof be changed from the aforesaid Trusteeship." It is also provided that the trust shall apply only to the proceeds of the two policies payable on Mahony's death or upon the maturity of the policies and shall not apply to disability benefits paid under the policies— those are to be paid directly to Jeremiah by the insurance company. The document is signed by Jeremiah and Doris Mahony, and by an officer of the Crocker bank.

It will be noted that when this trust was executed the policies had been lawfully assigned to O'Connell. O'Connell reassigned the policies to appellant on November 30, 1932.

Under date of December 1, 1932, appellant, on the regular form furnished by the Equitable, sent the policy to the Equitable and requested that company to change the beneficiary of its policy to ''Crocker First Federal Trust Company, as Trustee, under Trust Agreement dated October 22, 1930.'' Pursuant to this request and designation, on December 21, 1932, the Equitable endorsed, as beneficiary, the Crocker bank as trustee as requested by the insured. Early in January, 1933, the Equitable forwarded the policy to the trustee bank, and the policy has remained in the possession of the bank ever since.

A similar request was made by appellant of the Aetna Company in July of 1934 and that company at that time changed the beneficiary to the Crocker bank ''as trustee under Trust Agreement dated October 22', 1930.'' That policy has also been delivered to the bank as trustee and has remained in its possession. These transactions involved only the death benefits payable under the policies.

The disability benefits were the subject of separate transactions. Under date of December 27, 1932, Jeremiah and Doris as trustors executed another trust indenture dealing with these benefits. The document recites that the trustors ''are about to assign to the Trustee the moneys received and to be received on account of the disability payments provided for'' in the two policies. The trust authorizes the trustee— the Crocker bank—to collect the moneys due under these provisions and during Jeremiah's life to pay one-half to him and one-half to Doris, his wife; that if Doris predecease Jeremiah, her one-half to Marjorie; but, if both predecease Jeremiah, then all to him. This trust was to terminate upon Jeremiah's death, any funds then on hand to be distributed in accordance with the prior trust to which reference is made. The trust expressly provided that it was irrevocable and not subject to modification. The other provisions of the first trust, above mentioned, were likewise inserted in this trust agreement. About the time this second trust was executed appellant formally assigned, on forms furnished by the respective insurers, the disability benefits to the trustee. In the case of the Equitable assignment, the assignment was broad enough to include the death benefits, but the Aetna assignment was limited to the disability benefits. Appellant has been disabled since before the second trust was executed, so that since 1932

the trustee has collected all disability benefits from the insurers and disbursed the same in accordance with the provisions of the trust. Appellant accepted payments from the trustee as provided in the trust without objection until August 22, 1940, on which date he requested both insurers to change the death beneficiaries of their respective policies from the trustee bank to his present wife, Helen Mahony. Both refused without presentation of the policies, both policies being then in the possession of the trustee bank. The trustee refused to forward the policies, it contending that in view of the provisions of the trust indenture appellant was without power to revoke the trust and change the beneficiary.

On these facts the trial court concluded that such policies were subject to the provisions of the two trust indentures.

So far as the death benefits are concerned, appellant urges that the trust document of October 22, 1930, was unaccompanied by any assignment; that under the terms of the policies, in the absence of a valid assignment, he, as the insured, had the absolute right to change beneficiaries; that in the absence of an assignment there was a mere naked declaration of trust amounting to no more than a promise to make a gift; that such a promise will not be enforced.

The basic premise of this argument is that the only way a valid voluntary trust could have been created in the death benefits was by a formal assignment of the policies to the trustee. This basic premise is unsound. No consideration is necessary to create a binding voluntary trust. (*National Bank* v. *Exchange Nat. Bank,* 186 Cal. 172 [199 P. 1] ; *Kopp* v. *Gunther,* 95 Cal. 63 [30 P. 301] ; *Taber* v. *Bailey,* 22 Cal. App. 617 [135 P. 975].) Under the terms of the trust indenture of October 22, 1930, it was expressly provided that the trust should be irrevocable, and should continue at least until 1954. In that document appellant granted away his right to assign the policy. It is true that when the trust agreement was executed the death benefits were subject to the O'Connell assignments, but the policies were reassigned to appellant on November 30, 1932. On the very next day appellant formally requested the Equitable to change the death beneficiary of its policy, in accordance with the terms of the trust, to the Crocker bank as trustee ''under Trust Agreement dated October 22, 1930.'' On December 21, 1932, the Equitable complied with the request, changed the beneficiary

to the bank, and, with appellant's consent, delivered the policy to the bank as trustee. In July of 1934 the Aetna, pursuant to a similar request by appellant, changed the beneficiary of its policy to the bank as trustee under the terms of the October, 1930, trust, and delivered its policy to the bank. It is obvious that at least upon delivery of the trust res to the trustee a valid irrevocable voluntary trust was created. By that trust appellant has parted with his right to change the death beneficiary of the policies. The trustee and the donee beneficiaries gained indefeasible interests pursuant to the terms of the trust agreement which cannot be affected by any attempt to revoke the trust. If the trusts were not complete upon their acceptance by the trustee they certainly became complete when the beneficiary of the two policies, at the request of appellant, was changed to the trustee and the policies delivered to it.

■ It is true, as urged by appellant, that a beneficiary in a policy which authorizes the insured to change the beneficiary does not ordinarily acquire a vested right in the policy, even where the policy is delivered to the named beneficiary accompanied by words of gift. Normally, the interest of the named beneficiary is merely an expectancy of an inchoate gift which becomes vested upon the death of the insured. During the lifetime of the insured he may revoke the incomplete gift and change the beneficiary. (*Mutual Life Ins. Co.* v. *Franck,* 9 Cal. App.2d 528 [50 P.2d 480]; *Blethen* v. *Pacific Mut. Life Ins. Co.,* 198 Cal. 91 [243 P. 431].) But the power to change the beneficiary may be waived. That power may itself be the subject of a gift. If, by contract or by way of gift, the right to change the beneficiary is waived, the beneficiary secures a vested interest which may not be defeated by the insured attempting to change the beneficiary. (*Mutual Life Ins. Co.* v. *Franck,* 9 Cal.App.2d 528 [50 P.2d 480]; *McEwen* v. *New York Life Ins. Co.,* 42 Cal.App. 133 [183 P. 373]; *Shoudy* v. *Shoudy,* 55 Cal.App. 344 [203 P. 433]; *Lo Presti* v. *Manning,* 125 Cal.App. 442 [13 P.2d 1002].) ■ Here, by the terms of the trusts they were irrevocable for a set period and the insured was prohibited from modifying them in any way. The insured gave up his power to change the beneficiary, and completed the gift by having the bank named beneficiary as trustee and delivering the policies to it. A formal assignment of the policies was not indispensable to complete the gift of the death benefits. How-

ever, even if an assignment were necessary, such assignment, in fact, here existed. No particular form is required for an assignment. Here the insured had the bank named beneficiary, as trustee under the trust of October, 1930. Thus, so far as the rights of the bank and donee beneficiaries are concerned, the trust provisions were incorporated by reference into the policy. Those provisions made the trust irrevocable, specifically prohibited the insured from modifying the provisions of the trust, and waived the insured's right to change the beneficiaries. During the period of the trust the insured's rights were to be measured by the trust. He transferred his powers over the policy to the trustee. That, together with delivery of the policies, is tantamount to an assignment in fact, if such were needed.

As to the disability benefits, there were formal assignments executed by appellant. As to these benefits, appellant concedes that the gifts were complete in form, but urges that such gifts were made in contemplation of death and may now be revoked by him. (§§ 1149, 1150, 1151, Civ. Code.) During the trial appellant offered to prove that all the documents were executed when he was very ill (he has been totally disabled under the terms of the policies, and has been drawing disability benefits since 1925) and were made in contemplation of death; that at the time the documents were executed he did not expect to live more than a month; that it was his undisclosed intent that the gifts were to take effect only in the case of his death. The trial court sustained objections to that evidence. The ruling was correct. The proffered evidence directly contradicted the terms of the trusts. The death benefit trust was made irrevocable and was to last far in the future. Two years after the first trust was executed the appellant caused the beneficiary of the Equitable policy to be changed to the trustee, and some four years after the execution of that trust the beneficiary of the Aetna policy was changed to the bank as trustee. Yet appellant urges that in 1930 and 1932 when the trusts were executed, he believed he was in immediate danger of death and could not live more than a month. For eight years appellant acted under, and accepted the benefits of, the 1932 trust. So far as the disability benefits are concerned, the contention that they were the subject of a gift *causa mortis* approaches the absurd. A gift *causa mortis* takes effect only at death. The disability benefits would cease upon the death

of the insured. There can be no disability benefits after death. Obviously, if the gift of the disability benefits was to take effect only upon death, the 1932 trust was a nullity.

This contention of appellant was obviously an afterthought on his part. It was not mentioned in any of the pleadings filed by him. To permit this donor to challenge completed gifts eight and ten years after the gifts were consummated by his evidence that it was his intent, completely undisclosed until the offer of proof was made at this trial, would be to violate the parol evidence rule.

The judgment appealed from is affirmed.

Ward, J., and Dooling J. pro tem., concurred.

A petition for a rehearing was denied May 15, 1943, and appellant's petition for a hearing by the Supreme Court was denied June 14, 1943.