## Collins v. Hudson's Adm'x.

June 9, 1939.
As Modified on Denial of Rehearing May 17, 1940.

King Swope, Judge.

812

Hunt & Bush, Frank S. Ginnocchio, and Leslie W. Morris for appellant.

Allen, Duncan & Duncan for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part on the appeal, and affirming on the cross-appeal.

Frank Hudson and George Collins were friends and successfully engaged in the oil operating business as partners, and as a side line they formed a partnership in 1924, the purpose of which was to breed and race thorough-bred horses. As their oil business is not involved in this litigation, it will be understood when we refer to their partnership, or to any partnership business, we have reference to the horse breeding partnership. Mr. Hudson died May 1, 1925, and his widow, Mrs. Frances Hudson (now Mrs. Alley, but to whom we will refer in this opinion as Mrs. Hudson, since her name so appears in the greater part of the record), qualified as his administratrix. Mr. Collins, as the surviving partner, proceeded to wind up the affairs of the partnership.

All accounts between the partners had been settled up to January 1, 1925. The assets of the partnership consisted of $500.06 in the partnership account in the First National Bank and Trust Company of Lexington, Kentucky, eight brood mares, one 2 year old racing filly, Lucky Donna, four yearlings, five sucklings, and a small amount of stable equipment. Among the brood mares was one named Startle, a very fine animal which

was declared diseased in the spring of 1925 by Dr. Demock, a veterinary. Despite Demock's diagnosis, Collins bred this mare to Black Toney, in the spring of 1925, and over the protest of Mrs. Hudson, did not put her in the auction sale when the other stock were disposed of December 9, 1925, for the sum of $23,375. It developed Startle was in foal and Collins sold her privately on March 8, 1926, for $20,000 from which was deducted $2,000 commissions he paid Thomas Cromwell for making the sale. The parties agreed on this sale of Startle, and also, there is no complaint about the price the stock brought at the auction. Prior to the death of Hudson, the filly Lucky Donna was placed in training with Harry Fleming, who raced her a few times. After the death of Hudson, Collins continued to keep this filly in racing form but she was unsuccessful at racing and an expense of $1,878.75 was incurred in training and racing her.

It was not long after Hudson's death until dissension arose between his widow and his surviving partner, Collins, over the management of the partnership affairs, and as time progressed, so did their dissension. On August 1, 1925, Collins mailed Mrs. Hudson a statement showing expenses he had paid on the horses since January 1, 1925, to that date and made demand upon her for payment of one-half thereof. She did not remit and Collins continued to send her monthly statements. On May 24, 1926, he mailed Mrs. Hudson a statemenut showing the amount of the partnership expenses, the amount realized from the sale of all partnership assets and enclosed her a check for $13,244.13, the amount Collins admitted was due from him as the surviving partner to Hudson's administratrix upon settlement of the partnership. On June 12, 1926, Mrs. Hudson returned this check to Collins, advising him the formal settlement of the partnership was not satisfactory and she requested the privilege of examining the books. This privilege was granted her and the partnership books were taken to the office of Collins' attorney in Frankfort on July 17, 1926. Without the fault of anyone some confusion arose as to the time the books were to be examined in Frankfort and they were not examined there, but were brought back to Lexington. John Ginnocchio was bookkeeper for Hudson and kept the accounts for the partnership and had possession of the records which were lost, or mis-

placed, or disappeared, from his office subsequent to July 17, 1926.

A day or so before Hudson's death, he gave Ginnocchio a check for $8,700 directing him to deliver $8,500 to an undisclosed person. On May 29, 1925, Ginnocchio deposited this $8,700 check in the "horse account" of Hudson & Collins, in the First & City National Bank of Lexington, and on the same day Ginnocchio drew a check for $8500 on this account payable to himself as trustee and deposited same to his credit as trustee. It appears Collins knew nothing about this "horse account", nor this $8,700 item. After some conferences looking toward a settlement of the differences between Collins and Mrs. Hudson, Collins agreed to raise by $600 the sum he previously offered her. On December 14, 1926, a settlement was agreed upon for $13,844.13, and a petition was drawn asking the court to approve this settlement, but before it was approved by the court and the settlement consummated, the "horse account" was discovered by Mr. Duncan, the attorney for appellee. Upon discovering this "horse account", Mrs. Hudson and her attorney would not go on with the settlement and even refused to discuss the matter of settlement until Ginnocchio divulged the information for whom he was acting as trustee. Ginnocchio gave his check to Mrs. Hudson as administratrix for the $8500 he had drawn from the "horse account", which he had deposited to himself as trustee, but he steadfastly refused to give the name of the person for whom he was trustee. Collins testified that on December 15, 1926, he placed in his lock box in the Security Trust Company of Lexington $13,844.13 in gold and held it there until he paid it into court April 16, 1932.

On July 13, 1927, the administratrix filed this suit in the Fayette Circuit Court seeking a settlement of the partnership. The sheriff failed to get service on Collins and on December 14, 1927, the administratrix brought the same character of suit against Collins in the Franklin Circuit Court. Service was then had on defendant in both suits and he filed an answer and counter claim in the Franklin Circuit Court, and in the Fayette Circuit Court he pleaded the suit in the Franklin Circuit Court as a bar. The administratrix dismissed her petition in the Franklin Circuit Court without prejudice,

and the Fayette Circuit Court decided the suit in the Franklin Circuit Court was a bar to the suit in the Fayette Circuit Court and dismissed the petition. Collins had filed an answer and counter claim in the suit in the Franklin Circuit Court, and when plaintiff dismissed her petition in that court it did not affect the counterclaim of Collins. When the case was tried in the Franklin Circuit Court it was decided plaintiff and defendant had entered into a binding settlement for $13,844.13. The administratrix prosecuted an appeal from the judgment of the Fayette Circuit Court and an appeal from the judgment of the Franklin Circuit Court. The two cases were heard together in this court and are reported as Hudson's Adm'x v. Collins, 239 Ky. 131, 38 S. W. (2d) 975. We held the compromise settlement had not been approved by the Fayette Circuit Court and it was not binding on the estate; that Collins' counterclaim in the Franklin Circuit Court should have been dismissed without prejudice; that the administratrix had instituted her suit in the Fayette Circuit Court and its jurisdiction was not disturbed by her going into the Franklin Circuit Court on the same cause of action.

Upon the case being returned to the Fayette Circuit Court, Collins, after due notice to plaintiff, paid into court on April 16, 1932, $13,844.13, the amount he admitted was due the plaintiff from the partnership; also he paid the court costs up to that day amounting to $157.45. The court required Collins to reform his pleadings and to state in one pleading his entire defense to plaintiff's action. Therefore, in conformity with the court's order, he filed his reformed answer and counterclaim on July 12, 1932, and after setting out in detail all receipts coming into his hands and all expenditures made by him since Hudson's death, he asserted that the $13,844.13 he had paid into court on April 16, 1932, belonged to the plaintiff and was being held by the clerk of the court subject to her orders. Plaintiff tendered an amended petition wherein she sought to recover her attorney's fees and expenses incurred in that action, which pleading was refused by the court. The issues were completed by plaintiff's reply to the reformed pleading of Collins.

The case was referred to Hon. R. J. Colbert, Master Commissioner of the Fayette Circuit Court, who heard

a vast amount of proof on numerous items, after which he filed a full and complete report containing 58 pages. The commissioner found Collins was indebted to the plaintiff in the sum of $14,983.47, instead of $13,844.13 which Collins had paid into court, but he refused to allow plaintiff interest thereon. Collins filed no exceptions to the report of the commissioner but the plaintiff excepted to the following items: 1. Allowing Collins the expense of training Lucky Donna subsequent to 30 days after Hudson's death; 2. The allowance of counsel's fees of $1,000 to Collins in winding up the partnership affairs; 3. Failure to allow interest on the amount found to be due from Collins; 4. Failure to charge Collins with all the costs of the suit and in dividing same equally between the parties; 5. Allowing wages paid to Jim Young for caring for Startle; 6. Allowing $40 per month for the care and keep of each of the partnership horses, and to any allowance in excess of $30 per month for each animal. The chancellor overruled exceptions, two, five and six. As to exception one, he reduced the allowance to Collins for the expense of training and campaigning Lucky Donna from $1,878.75 to $1,687.25, which reduction amounts to $191.50. As Collins bore only half of this training expense, this increased his debt to plaintiff by $95.75 over the sum found by the commissioner of $14,983.47 and the chancellor held he was indebted to plaintiff in the sum of $15,079.21. The chancellor sustained exception three and allowed the administratrix interest on $15,079.21 from April 23, 1926 (the date she made demand for settlement) to July 12, 1932 (the date Collins filed his amended and reformed answer alleging the $13,844.13 paid into court April 16, 1932, belonged to the administratrix), and she was allowed interest on $1,235.80 from July 12, 1932, until paid. This $1,235.80 is the difference between the sum the chancellor found was due the administratrix and the sum Collins paid into court. The chancellor also sustained exception four and found all the court costs were to be paid by Collins. Judgment was entered in conformity with the Chancellor's rulings on the exceptions.

Collins prosecutes an appeal to reverse the judgment because the chancellor erred: 1. In reducing the training expenses on Lucky Donna by $191.50; 2. In allowing any interest on amounts the administratrix re-

ceived; 3. In adjudging all the cost of the action against him.

The plaintiff on her cross appeal assigns the following errors: 1. The $1,000 allowance to Collins for attorneys' fees; 2. the allowance for the keep of each horse should be reduced from $40 to $30 per month, and $15 per week should not have been allowed for a hostler for caring for Startle; 3. In not further reducing the sum allowed for training Lucky Donna; 4. Refusing to allow her to file an amended petition seeking attorney's fees and expenses incurred by her in this action; 5. Refusing to allow interest on $13,844.13 subsequent to July 12th, 1932, and refusing to allow her any interest prior to April 23, 1926, on the amount due from plaintiff.

This record is voluminous, consisting of eleven volumes of more than 1500 pages, and to keep the length of this opinion within reasonable bounds, we are grouping the assigned errors wherever they are related and discussing them together. Plaintiff's second and third contentions and defendant's first contention involve the questions of fact relating to the care and training of horses, and all three will be disposed of in this paragraph. The finding of the commissioner, which was approved by the chancellor, that $40 per month was a reasonable allowance for the care and keep of these horses, and that $15 per week was a reasonable allowance for a hostler to care for Startle is fully supported by the record. It must not be forgotten that these were not ordinary horses and that Startle's value was in her ability to produce a foal. She was not only high-bred but was an extremely nervous animal and required much more than ordinary care and attention, and by proper handling she sold for $20,000 when safely in foal. Our mind is left in doubt as to whether the chancellor should have reduced the sum of $1,878.75 the commissioner allowed for the training of Lucky Donna to $1,687.25, and in such instances this court will refuse to disturb the findings of fact by the chancellor. We feel quite certain the chancellor was correct in not further reducing the sum allowed for the training and racing of this filly, as the surviving partner is justified in keeping a race horse in racing form so the animal may be sold to advantage. Central Trust & Safety Deposit Company v. Respass,

112 Ky. 606, 66 S. W. 421, 23 Ky. Law Rep. 1905, 56 L. R. A. 479, 99 Am. St. Rep. 317.

We cannot agree with plaintiff's first contention that both the commissioner and the chancellor erred in allowing Collins a credit of $1,000 on the $1,500 fee he paid the attorneys representing him in winding up the partnership business. The $43,375 assets of the estate were in the form of eight brood mares, a two year old racing filly, four yearlings and five sucklings. If Collins had been incorrectly advised, these horses might have been sold for only a small fraction of the price they actually brought. Mrs. Hudson was insisting upon disposing of them much sooner and in a different manner from the way Collins sold them. Collins testified he was "leaving it pretty near all to them (the attorneys.)" The contract under which Startle was sold for $20,000 was considered and approved by his attorneys. Somebody did splendid work in getting $43,000 out of these horses and Collins thought enough of his attorneys to freely and willingly pay them a fee of $1,500, when he knew that half of this fee would be borne by him. The commissioner thought Collins paid too much to the attorneys and only allowed him credit for $1,000 on this item in the settlement of his accounts, which action of the commissioner was approved by the chancellor. Mrs. Hudson does not contend in her brief that Collins was not entitled to the services of an attorney in winding up the partnership, but she insists $250 would have been ample compensation for such services. The attorneys representing Collins were gentlemen of high standing and of marked ability in the legal profession. When we consider the speculative quality of the assets of this partnership and the excellent results obtained from their sale, we conclude the allowance to Collins of a credit of $1,000 for attorney's fees in the settlement of his accounts was not unreasonable. Daly v. Power, 236 Ky. 426, 33 S. W. (2d) 305; Baxter v. Hubbard, 242 Ky. 751, 47 S. W. (2d) 743.

The chancellor correctly refused to allow Mrs. Hudson to file her amended petition wherein she sought to recover her attorney's fees and expenses incurred in this action. This tendered pleading alleged she filed this action to settle the estate "to protect and enforce her legal rights against defendant." We presume she is asking attorney's fees and expenses incurred in this

litigation by virtue of Section 489, Kentucky Statutes. Under this statute, attorneys fees and expenses may be recovered where some of the parties have prosecuted the action for the benefit of others interested with themselves. This statute applies where the parties have a common interest and a suit is brought for their common benefit and one attorney carries the whole burden. But even then, one jointly interested cannot be compelled to pay counsel employed by others when he is represented by his own counsel, Bailey's Adm'r et al. v. Barclay, etc., 109 Ky. 636, 60 S. W. 377; Howard v. Carmichael, 237 Ky. 462, 35 S. W. (2d) 852.

We come now to the consideration of the exceptions of both parties to the chancellor's determination of the matter of interest. Collins knew there was a large sum of money due Mrs. Hudson from him and on May 24, 1926, he mailed her a check for $13,244.13, which she declined to accept and returned it to him June 12, 1926. On or about December 14, 1926, Collins increased this amount by $600 and the parties tentatively agreed to a settlement by his paying $13,844.13. But that settlement was never consummated and Collins says he placed this sum in gold in his lock box in the Security Trust Company in Lexington, and held it there until he paid it into court on April 16, 1932. When he filed his reformed answer on July 12, 1932, Collins set out therein that the sum of $13,844.13 which he had paid into court on April 16th, belonged to the plaintiff and was held by the clerk of the court subject to her order. Under Sections 380 and 640 of the Civil Code of Practice, Mrs. Hudson was entitled to judgment for this uncontested sum from the date of the filing of this reformed pleading without prejudice to her right to continue with the prosecution of her action against defendant to recover all sums due her on a settlement of the partnership, Louisville Clothing Company v. Harned, 258 Ky. 442, 80 S. W. (2d) 549, and the chancellor was correct in adjudging that interest on this sum stopped when this reformed pleading was filed July 12, 1932. Plaintiff made demand upon defendant for settlement April 23, 1926, and he knew that there was a large sum due Mrs. Hudson at that time, because on May 24, 1926, he mailed her a check for $13,244.13. She was under no obligation to accept less than the full amount due her, nor could Collins stop interest on the sum he was willing to pay by depositing

it in his lock box. By complying with Section 380 of the Civil Code of Practice Collins could have stopped interest on the sum he admitted owing her, and when he chose to follow the bent of his own mind rather than the provisions of the Civil Code of Practice, he cannot complain that the chancellor allowed Mrs. Hudson interest on $13,844.13 from the date of her demand, and from the date he knew he was indebted to her, until he did see fit to comply with the Civil Code of Practice. While the chancellor allowed interest on $15,079.21 from April 23, 1926; to July 12, 1932, he should have allowed interest only on $13,844.13 for this interim.

Obviously, the chancellor was correct in not allowing interest until Mrs. Hudson made demand for a settlement. On December 9, 1925, all the horses except Startle were sold for $23,375 and on March 8, 1926, Startle was sold for $20,000. Therefore, Collins was able to make a close estimate of the amount due Mrs. Hudson when she demanded a settlement April 23, 1926, and it was his duty to pay her such amount as his figures showed there could be no doubt of her being entitled to. The remainder he would have been justified in withholding until a final settlement. Interest is not usually allowed on unascertainable balances in a partner's hands, but where the balance due between the parties is known, interest should be paid, and it will be allowed, where one partner retains money for an unreasonable length of time, or where the circumstances are such as equitably demand the payment of interest. 47 C. J. 1182, Section 876; Ashbrook v. Ashbrook, 28 S. W. 660, 16 Ky. Law Rep. 593; Jones v. Jones, 254 Ky. 475, 71 S. W. (2d) 999.

But as to the additional $1,235.80 the chancellor adjudged to be due Mrs. Hudson from the partnership, we conclude he erred in adjudging interest thereon from July 12, 1932, (the date Collins filed his reformed answer), because this sum was not determined, and could not have been, until final judgment was entered. Collins had admitted there was due Mrs. Hudson $13,844.13, and the commissioner after hearing over 1,500 pages of proof covering a multitude of items of expense raised this by sum of $1,139.34 and found there was due her $14,983.47, and the chancellor increased this sum by $95.75, thereby making a total of $15,079.21. This made

an increase of $1,235.80 over the amount Collins paid into court. If the commissioner and the chancellor, after considering all this proof were not able to agree upon the amount due Mrs. Hudson on a final settlement of the partnership, then it hardly could be expected Collins would know the exact amount due her before proof was taken. The greater part of this increase is made up of sums Hudson contributed to the "horse account" in excess of contributions made thereto by Collins. Therefore, this increased sum of $1,235.80 was not ascertainable until a final judgment was entered June 26, 1937, and it should bear interest from that date, and not from July 12, 1932, as adjudged by the chancellor. From what we have said, it follows the chancellor also erred in allowing interest on this $1,235.80 from April 23, 1926, to July 12, 1932.

Mrs. Hudson's argument that she should be allowed interest on half of the net proceeds of the auction sale from the date thereof, December 9, 1925, and half of the net proceeds of the sale of Startle from the date of that sale, March 8, 1926, is not convincing. She cites many authorities to the effect that where one of the partners retains in his hands and uses funds of a partnership during the pendency of a settlement of that partnership, he should be required to pay interest on the balance found to be due. This seems to be the correct rule but it does not fit the facts in this case. It would naturally take some time to get together all expenses incident to the auction sale; also, Collins would have had to make up a settlement for all expenses since Hudson's death to have made a partial settlement with Mrs. Hudson immediately after the auction sale, and this would have taken some time. Startle was sold just three months after the auction, and we think it reasonable that Collins be allowed to make one settlement covering both sales. Mrs. Hudson did not make demand for a settlement until April 23, 1926, which was a little more than a month after Startle was sold, and the chancellor was correct in allowing her interest only from the date of this demand.

We are of the opinion the chancellor erred in taxing all the cost of this action against Collins. When these parties could not agree upon a settlement, either of them had the right to resort to the courts for a settle-

ment of the partnership affairs. On April 16, 1926, Collins paid into court $13,844.13 and on that same day he also paid the court cost up to that date, amounting to $157.45. Evidently, he paid this cost because he realized by admitting there was due Mrs. Hudson from the partnership practically the full amount she claimed, that a court of equity, under the discretion given it in Section 889 Kentucky Statutes, would adjudge Mrs. Hudson was entitled to recover her cost from him. There was really no contest in this litigation up to this point but had Collins paid to Mrs. Hudson the amount he admitted was due her through the partnership, nevertheless, it would have been necessary to bring a suit to settle the partnership as the parties were in disagreement on other matters. As Collins admitted there was $13,844.13 due Mrs. Hudson when he paid that sum into court April 16, 1932, he properly paid the court costs up until that time. But from that point out the case involved numerous items and it was impossible to determine the exact amount due Mrs. Hudson from the partnership without resorting to suit. By far the greater part of the $1,235.80, additional sum, which the chancellor adjudged was due Mrs. Hudson from the partnership, came from the fact Collins had not made equal contributions with Hudson to the "horse account" which fact was developed in this litigation. Neither Mrs. Hudson nor Collins knew of the existence of this "horse account" until they were about to settle their differences and its discovery brought on the spirited contest in this litigation. Neither of these parties was responsible for the "horse account" nor the manner in which it was kept, and without doubt it was the real cause of their differences. As it was not possible for either party to know where he, or she, stood without this suit, and as a commissioner's services were necessary for a determination thereof, we are of the opinion the chancellor should have divided the costs equally between the parties, instead of adjudging all of it against Collins. Swafford's Adm'r v. White, 28 Ky. Law Rep. 119, 89 S. W. 129; Poetter v. Poetter, 277 Ky. 662, 126 S. W. (2d) 1119.

The judgment is affirmed in part and reversed in part on the appeal, and affirmed on the cross-appeal. Under the facts of this record, we hold that the costs on this appeal be divided equally between the parties.