Estate of Bryan S. McCoy, Sr., Deceased, Bryan S. McCoy, Jr., Executor v. Commissioner.
Estate of McCoy v. Commissioner
Docket No. 65895.
United States Tax Court
T.C. Memo 1961-40; 1961 Tax Ct. Memo LEXIS 303; 20 T.C.M. (CCH) 224; T.C.M. (RIA) 61040; February 21, 1961
*303 1. Pursuant to a property settlement agreement between decedent and his then wife, the Eldorado Apartments were transferred by the McCoy Realty Company, a corporation controlled by decedent, to the decedent for life, with remainder in fee in equal parts to their three children. Subsequently the property settlement agreement was incorporated in the divorce decree. Held, the transfer of the Eldorado Apartments was made for an "adequate and full consideration in money or money's worth" and, accordingly, the value thereof is not includible in decedent's gross estate under sec. 2036(a)(1), I.R.C. 1954. 2. Held, decedent's gross estate includes the net proceeds of a certain life insurance policy with respect to which decedent possessed at his death the right, without the consent of any beneficiary, to obtain loans for the payment of premiums. Sec. 2042(2). 3. Held, deduction as administration expenses of certain attorneys' fees in excess of $1,000 disallowed. Sec. 2053(a). J. W. Jones, Esq., 915 Kentucky Home Life Building, Louisville, Ky., for the petitioner. Arthur Clark, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: This proceeding involves a deficiency in Federal estate tax in the amount of $22,126.25. The issues are: (1) whether the net fair market value of the Eldorado Apartments as of the date of decedent's death is includible in his gross estate under section 2036(a), Internal Revenue Code of 1954; (2) whether the proceeds of certain life insurance are includible in his gross estate under section 2042; and (3) whether certain attorneys' fees are properly deductible from the value of the gross estate under section 2053(a). Other issues presented by the pleadings and relating to the fair market value of certain stock in McCoy Realty Company and McCoy Builders, *306 Inc., have been settled by the parties in the stipulation and will be given effect in the Rule 50 computation. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Bryan S. McCoy, Sr., the decedent herein, died testate, a resident of Louisville, Jefferson County, Kentucky, on September 10, 1954. Bryan S. McCoy, Jr., the decedent's son, qualified and is the duly appointed and acting executor of decedent's estate. The estate tax return for decedent's estate was filed on December 12, 1955, with the district director of internal revenue for the district of Kentucky. For many years prior to his death, decedent was engaged in the business of subdividing and developing real estate for sale and in the real estate rental business. He conducted these businesses through the operation of three corporations: McCoy Realty Company, McCoy Builders, Inc., and Bryan S. McCoy, Inc., and through a proprietorship which he operated in his own name. Elizabeth McCoy, decedent's then wife, hereinafter referred to as Elizabeth, held 3 shares of the capital stock of McCoy Realty Company, the decedent held 9 shares, and Maggie McCoy, the decedent's mother, *307 held the remaining 3 shares. Elizabeth also held joint title with her husband in certain real estate used in the operation of her husband's real estate business. Elizabeth was a housewife, and took no active part in the operation of the said businesses. On April 30, 1947, Elizabeth commenced a proceeding in the Circuit Court of Jefferson County, Kentucky, Docket No. 301-354, wherein she sought a judgment of divorce, alimony and a division of property from the decedent. On June 11, 1947, Elizabeth, as party of the first part, and decedent, as party of the second part, entered into a property settlement agreement, which provided as follows: 1. The McCoy Realty Company, a Kentucky corporation, of which Party of the First Part is Secretary-Treasurer, Party of the Second Part is President and their son, Bryan S. McCoy, Jr., is Vice-President, is the owner of a certain lot, together with an apartment building thereon, located on the northeast corner of Belview and Woodlawn Streets in the City of Louisville, Kentucky and Party of the Second Part herein and hereby guarantees that he will cause said corporation to immediately deed said property to the Party of the First Part for and during *308 her natural life, with remainder in fee and in equal shares to the children of the parties hereto, viz: Bryan S. McCoy, Jr., Marie McCoy and Paul McCoy. (a) There are at the present time three mortgages on said property for the principal sum of Sixteen Thousand Four Hundred Dollars ($16,400.00) each, or an aggregate amount of Forty-nine Thousand Two Hundred Dollars ($49,200.00). It is agreed that Party of the First Part shall immediately cause to be paid one of the said mortgages, all of which are held by the Franklin Title & Trust Company of Louisville, Kentucky, in the sum of Sixteen Thousand Four Hundred Dollars ($16,400.00), leaving a balance of the mortgage indebtedness thereon of Thirty-two Thousand Eight Hundred Dollars ($32,800.00), which the Party of the First Part assumes and agrees to pay. (b) In addition to the mortgages aforementioned, there are certain outstanding bills due and payable for services and materials incurred in the construction of apartment building aforementioned, all of which are to be immediately paid by the Party of the Second Part. (c) The apartment building aforementioned, together with the garages connected with same and certain improvements *309 have not been fully completed. The Party of the Second Part is to complete all of the improvements provided for in the original plans and specifications and those contemplated by the Second Party before entering into this contract, as speedily as possible and not in any event to exceed a period of six (6) months from the date of the signing of this agreement, at his expense. 2. Party of the First Part is to become the sole owner of the premises where Party of the First Part now resides, located at 948 South Forty-seventh Street, Louisville, Kentucky and Party of the Second Part is to immediately pay the mortgage indebtedness thereon amounting to the sum of approximately Twelve Thousand Dollars ($12,000.00). 3. Party of the Second Part is to pay to the Party of the First Part the sum of Two Thousand Dollars ($2,000.00) which Party of the Second Part has heretofore borrowed from the Party of the First Part. 4. Party of the Second Part agrees to pay the costs of the above styled action, together with an attorney's fee for Party of the First Part's attorney in the sum of $ [sum omitted]. 5. The McCoy Realty Company, a Kentucky corporation, is the owner of the Eldorado Apartments *310 located east of Floyd Street on Eastern Parkway in the City of Louisville, Kentucky, the address being 415 Eastern Parkway. It is agreed by and between the parties hereto that said apartment building shall be immediately transferred to Party of the Second Part for and during his natural life, with remainder in fee in equal parts to the three infant children of the parties hereto, viz: Bryan S. McCoy, Jr., Marie McCoy and Paul McCoy. 6. Party of the Second Part agrees to pay for the education of the three infant children of the parties, to-wit: Bryan S. McCoy, Jr., Marie McCoy and Paul McCoy as he has heretofore done. 7. Party of the First Part is to immediately execute quit claim deeds to any and all property jointly owned by the parties hereto or in any property in which the title is held by Party of the First Part, save and except the property or properties above described, and Party of the First Part further agrees to sign any and all necessary writings and papers in order to place the title to said property in the Party of the Second Part. Party of the Second Part is to assume all indebtedness now existing on the property now jointly owned by the parties or on property owned *311 by the Party of the First Part, save and except the two mortgages above referred to on the property located at the corner of Bellview and Woodlawn Streets referred to in paragraph 1 herein and Party of the Second Part agrees to save Party of the First Part harmless from any and all liability by reason of said indebtedness. Party of the First Part further agrees to immediately resign her position as a director and officer of the McCoy Realty Company above referred to and to transfer her stock therein to Bryan S. McCoy, Jr. 8. Party of the First Part is to have the care and custody of the infant children, Marie McCoy and Paul McCoy, with the right upon the part of the Party of the Second Part to see said children and have them with him at all reasonable times and on all reasonable occasions. 9. This writing is to evidence a full, final and complete settlement of any and all claims of every nature, character and description which either of the parties hereto may have against the other growing out of their marital and business relationship and including alimony and maintenance, past, present and future and all curtesy and dower rights. 10. It is further agreed by and between the *312 parties hereto that this agreement shall be made a part of any judgment entered in the above styled action. On June 19, 1947, the parties agreed to certain supplemental stipulations to the foregoing property settlement agreement which are embodied in letters dated June 13, 1947, and June 19, 1947. These letters relate principally to the execution of the deeds and mortgages referred to in paragraph 7 of the property settlement agreement and the terms of the conveyance to Elizabeth of the apartments located at Bellevue [1] and Woodlawn Streets per paragraph 1 of the said agreement. Paragraph 12 of the stipulation of facts notes: "Prior to October 14, 1947 * * * Elizabeth owned three shares of [McCoy Realty Company] stock * * *." The letter dated June 13, 1947, addressed to decedent's attorney and attached to the settlement agreement states the certificate for such stock endorsed in blank by Elizabeth was enclosed therewith. The supplemental agreement also provided that "Mrs. McCoy further agrees to execute any and all other documents which may be necessary for the consummation of loans or sales which Mr. McCoy may request * * *." *313 On July 14, 1947, pursuant to paragraph 5 of the property settlement agreement, the decedent executed a deed on behalf of the McCoy Realty Company wherein the Eldorado Apartments, theretofore owned by the said corporation, were conveyed to the decedent for life with remainder to his three children, Bryan McCoy, Jr., Carl Paul McCoy, and Marie McCoy (Habig). The deed stated it was for the consideration of one dollar and other good and valuable consideration and for the further consideration as set forth in Action #301354, Jefferson Circuit Court, Chancery Branch, Second Division - the divorce action between decedent and Elizabeth. The decedent held this life interest at the date of his death, at which time the fair market value of the apartments was $110,000, subject to a mortgage encumbrance in the amount of $58,757.81. On August 11, 1947, the Circuit Court of Jefferson County, Kentucky, entered a judgment of divorce in the action referred to above in which the property settlement agreement adopted by the parties on June 11, 1947, together with the supplemental stipulations, was incorporated. The judgment of divorce recites: It is further considered and adjudged by the Court *314 that the agreement between the parties heretofore filed herein be and the same is hereby made a part of this judgment. Said agreement being as follows, to-wit: * * *
Prior to the execution of the said property settlement agreement, Elizabeth had refused to cooperate with the decedent in executing deeds, mortgages and other documents in an effort to induce the decedent to accede to her demands for divorce and for an equitable division of property. On October 14, 1947, the decedent executed on behalf of the McCoy Realty Company three deeds wherein certain apartment buildings located at Woodlawn and Bellevue Streets, Louisville, Kentucky, theretofore owned by the corporation, were conveyed to Elizabeth for life with remainder to their three children. Each of said deeds stated it was for the consideration of one dollar and other good and valuable consideration and for the further consideration as set forth in Action #301354, Jefferson Circuit Court, Chancery Branch, Second Division - the divorce action between decedent and Elizabeth. In September 1928 the decedent acquired from the Mutual Benefit Life Insurance Company of Newark, New Jersey, a policy of insurance on his life *315 in the face amount of $5,000, the number of said policy being No, 1,363.504. Under this policy decedent's wife, Elizabeth, was named as the beneficiary. Decedent's application for the Mutual Benefit policy included the following provision wherein decedent retained certain rights as indicated by the word "yes" written after them: I desire, without the consent of any beneficiary, to exercise such rights and options as have "Yes" written after them. If (e), (f), (g) and (h), or any of them are to be so exercised I am to receive all benefits arising therefrom. (a) Change of Beneficiary
No
(b) Loans to Pay Premiums
Yes
(c) Reinstatement
Yes
(d) Settlement Options
No
(e) Surrender Option
No
(f) Cash Loans
No
(g) Dividend Rights Prior to Ma-
turity of Policy
No
(h) Receipt of proceeds as En-
dowment
No
One of the provisions contained in the property settlement agreement was that the decedent would change the beneficiary of the said policy of insurance from Elizabeth to their three children. The letter dated June 19, 1947, provided: Mr. McCoy has insurance on his life in the sum of $5,000 at the present time and Mrs. McCoy is the beneficiary therein. *316 It is agreed that Mr. McCoy shall change the name of the beneficiary from Mrs. McCoy to their three children, making them the beneficiaries with the further proviso that he will at no time thereafter make any changes in the names of the beneficiaries. Decedent employed J. W. Jones, an attorney, to effect this change of beneficiary. Jones contacted Elizabeth and presented to her a form provided by the insurer with which to effectuate the change. Elizabeth refused to execute the form upon the grounds that such a change of beneficiary in accordance with that form would permit the decedent to make a subsequent change of beneficiary, whereupon Jones requested and received from the insurer a form which would render the change of beneficiary to the children irrevocable. Elizabeth refused to execute the revised form to change beneficiaries, and upon the decedent's death, no irrevocable change of beneficiaries had been effected. The proceeds of the policy in the amount of $4,349.55 were ultimately paid to the three children of the decedent. The difference between the face value of the policy in the amount of $5,000, and the proceeds actually paid, in the amount of $4,349.55, was due to *317 loans to the decedent for the payment of premiums. Bryan S. McCoy, Jr., decedent's son, employed J. W. Jones to represent him individually, as well as in his fiduciary capacity as executor of the petitioner. The petitioner has employed no other counsel. Randolph A. Brown, an attorney at law, was employed by decedent's other children, Marie McCoy Habig and Carl Paul McCoy. In the estate tax return petitioner claimed total deductions of $8,250 for attorneys' fees. In Schedule J of said return this amount was itemized as follows: Agreed atty. fees to be paid directly by beneficiaries: to Atty. Randolph A. Brown - $6,250.00; to Atty. J. W. Jones - $2,000.00. Brown's fees have been fully paid by his clients, Marie McCoy Habig and Carl Paul McCoy. J. W. Jones was paid the sum of $1,000 for the services he rendered to petitioner out of the executor's fiduciary account. J. W. Jones did not have any contract or other understanding with the executor concerning his interim or ultimate attorney fees. He submitted to the executor no statement of fees due or itemized statement of services rendered. Opinion Under paragraph 5 of the property settlement agreement the decedent and his *318 then wife agreed that the Eldorado Apartments, which were the property of the McCoy Realty Company, a corporation of which decedent was the majority stockholder, would be transferred to decedent for life, with remainder in fee in equal parts to their three children. Respondent determined that the value of the Eldorado Apartments is includible in decedent's gross estate under section 2036(a)(1), Internal Revenue Code of 1954, which provides: SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule. - The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), * * * under which he has retained for his life * * * (1) the possession or enjoyment of, or the right to the income from, the property, * * * Respondent's position is that the consideration for decedent's transfer was the relinquishment or promised relinquishment of dower or other marital *319 rights in the decedent's property or estate and that under section 2043(b)[2] such relinquishment does not constitute "consideration in 'money or money's worth.'" We do not agree with respondent's position. The property settlement agreement when viewed as a whole in light of the entire record evidences a settlement of business, as well as of marital, rights. Paragraph 9 expressly states that the agreement is "a full, final and complete settlement of any and all claims * * * growing out of their marital and business relationship." Under paragraph 1 it was agreed that the McCoy Realty Company would transfer certain appartments to Elizabeth, remainder to their children, and under *320 paragraph 5 it was agreed that the McCoy Realty Company would transfer the Eldorado Apartments to decedent, remainder to their children. Out of a total capitalization of 15 shares in the McCoy Realty Company, decedent held 9 shares and Elizabeth held 3 shares. Thus, by reason of their respective stock ownership, decedent gave up three-fifths of his beneficial ownership in the apartments transferred under paragraph 1 and Elizabeth gave up one-fifth of her beneficial ownership in the Eldorado Apartments transferred under paragraph 5. In addition, Elizabeth relinquished her stock ownership in McCoy Realty Company and her interest in any and all other property which was jointly held by her and decedent. In determining the existence of "adequate and full consideration" the various paragraphs of the property settlement agreement are not to be viewed separately but must necessarily be considered together. When so considered it is clear that each of the transfers constitutes consideration for the other. This conclusion is further evidenced by the fact that in each of the deeds conveying the Eldorado Apartments and the other apartments the recited consideration was one dollar and other good *321 and valuable consideration and for the further consideration as set forth in Action #301354, Jefferson Circuit Court (the divorce action between decedent and Elizabeth). It is our opinion and we so hold, that the transfer of the Eldorado Apartments was made "for an adequate and full consideration in money or money's worth" and the net value thereof is not includible in the decedent's gross estate under section 2036(a)(1). Respondent also determined that the decedent possessed, at the time of his death, incidents of ownership in life insurance policy number 1,363,504 issued by the Mutual Benefit Life Insurance Company and that the proceeds therefrom are includible in the gross estate by virtue of section 2042(2), [3] which provides that the value of the gross estate shall include the value of insurance under policies on the life of the decedent payable to beneficiaries other than the executor "with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person." *322 Section 20.2042-1(c)(2) of the Regulations defines "incidents of ownership" as follows: For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder. Under the policy here in question decedent retained the right, without the consent of any beneficiary under the policy, to obtain loans for the payment of premiums, and in fact, he exercised this right by borrowing on the policy to the extent of $650.45. It has been held that *323 the right to borrow money upon an insurance policy, even though limited in amount, constitutes an incident of ownership sufficient to cause the proceeds thereof to be included in the gross estate. Allentown National Bank et al., Executors, 37 B.T.A. 750; Chase National Bank of the City of New York et al., Executors, Estate of Moritz Neuberger v. Hickey, an unreported case ( N.D.N.Y. 1942, 30 A.F.T.R. 1685. Accordingly, respondent's determination including the net proceeds of the Mutual Benefit life insurance policy in the amount of $4,349.55 in decedent's gross estate is sustained. In its estate tax return petitioner claimed deductions for attorneys' fees in the aggregate amount of $8,250, of which $2,000 was attributed to the fees of J. W. Jones and $6,250 was attributed to the fees of Randolph A. Brown. Respondent determined that all of said attorneys' fees were incurred by the beneficiaries incident to their respective personal interests and were therefore not proper deductions as administration expenses under section 2053(a). [4]
*324 Under section 2053(a) administration expenses are deductible from the value of the gross estate to the extent that such expenses are allowable by the laws of the jurisdiction under which the estate is being administered. Under the law of Kentucky, attorneys' fees incurred by an executor in connection with his individual interest as an heir may not be allowed as expenses of the estate and may not be paid out of the general fund of the estate. Goode v. Reynolds, 208 Ky. 441, 271 S.W. 600; Slaughter's Ex'r v. Caldwell, (Ky.) 287 S.W. 720; Douglas' Adm'r v. Douglas' Ex'r, (Ky.) 48 S.W. 2d 11; Daly v. Moran, 256 Ky. 280, 75 S.W. 2d 1041. Under Treasury Regulations 2053-3, only such expenses as are "actually and necessarily incurred in the administration of the decedent's estate" are properly deductible. "Expenditures not essential to the proper settlement *325 of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions." Regs. 2053-3(a). "The executor or administrator, in filing the estate tax return, may deduct such an amount of attorney's fees as has actually been paid, or an amount which at the time of filing may reasonably be expected to be paid." Regs. 2053-3(c)(1). "Attorneys' fees incurred by beneficiaries incident to litigation as to their respective interests do not constitute a proper deduction, inasmuch as expenses of this character are incurred on behalf of the beneficiaries personally and are not administration expenses." Regs. 2053-3(c)(3). See Leo J. Dutcher, 34 T.C. 918, expressly approving the statements contained in Regs. 2053-3(a) and 3(c)(3). The evidence in the instant case clearly reveals that J. W. Jones was employed to represent the executor in his individual capacity, as well as in his capacity as executor. In a deposition taken subsequent to the trial, Jones testified as to the general nature of the services rendered by him. Some of them were unquestionably in aid of the administration and settlement of the estate. Some, however, such *326 as, for example, the procurement of payment of an insurance policy to the three children rather than to the decedent's former wife, appear to have been more in the interest of the individual heirs than of the estate. Jones kept no record of the time spent or work performed by him on the various activities. No contract or other understanding was had between Jones and the executor regarding attorney fees and, as of the date of the hearing herein, the question of attorneys' fees had not been presented to or ruled upon by the probate court. The allowance of attorney fees has been held by the Kentucky Courts to be a matter resting in the discretion of the trial court. Crutcher v. Elliston's Ex'rs, 299 Ky. 613, 186 S.W. 2d 644; Gernhert v. Liberty National Bank & Trust Co., 284 Ky. 575, 145 S.W. 2d 522. In his deposition taken subsequent to trial, Jones testified that he had been paid $1,000 out of the executor's fiduciary account and $250 by the executor individually. On reply brief, respondent has conceded that the $1,000 paid to Jones as attorney fees by the executor *327 is properly deductible. Petitioner has failed to establish that it is entitled to deduct any greater amount. Accordingly, on the record presented, we hold that petitioner is entitled to a deduction not in excess of $1,000 as attorney fees paid or incurred to J. W. Jones. We next consider the deductibility of the $6,250 which was paid to Randolph A. Brown, as attorney fees, by Marie McCoy Habig and Carl Paul McCoy, two of the heirs of decedent. Brown was employed by Marie and Carl. The amount of $6,250 which petitioner seeks to deduct was fully paid by them and not by the petitioner. There was no arrangement or understanding that Brown would be paid anything by petitioner. Brown himself testified, "I had no claim on [the executor]. I looked to my people * * *." The testimony indicates he worked on the same matters pertaining to the administration and settlement of the estate, including the payment of insurance benefits to the heirs, as had Jones. There is no indication, however, that his services were necessary or required. The executor, who was himself an attorney, and his attorney were perfectly capable of handling the administration and settlement of the estate. See Skinner v. Morrow (Ky.), 318 S.W. 2d 419, *328 wherein, in commenting on the fees allowable to attorneys for the administration and the attorney who had brought a settlement suit on behalf of alleged heirs, the court said: "The administrator had the duty to see that the estate was properly administered and distributed, and could not simply stand back and let the heirs conduct the litigation," and further that "We are not prepared to say that the settlement suit brought by Mr. Fields was wholly unnecessary and fruitless. However, it did accomplish very little that could not have been accomplished satisfactorily by the Administrator. * * * the administrator and its attorney were perfectly capable of protecting the interests of the estate." See also Bishop and Collins v. Macon Lumber Co., 149 F. Supp. 46 (E.D. Ky.), where, in considering the question of fees to be allowed the attorneys representing the plaintiffs, who were preferred stockholders, in a receivership proceeding, under the general equity powers of the court, said: "It should be noted that there are three attorneys asking separate allowances for their fees. I do not think this fund should bear three times the cost of one good attorney. Any one of the three *329 attorneys was capable of prosecuting the litigation. The fact that they each had two assistants should not be imposed as an additional burden upon the fund." Section 412.070 of the Kentucky Revised Statutes (formerly section 489 of the Kentucky Statutes) is not applicable. That section provides for compensation of party pressing claims in common interest for others, "In actions for the settlement of estates." Here no action for settlement of the estate was brought. Nor was there any apparent necessity for one to have been brought. Moreover, as a general rule, the Kentucky courts have refused to allow attorney fees under this statute to one party to be charged against the general fund where other parties on the same side are represented by their own attorneys in the same litigation. Cambron v. Pottinger, 310 Ky. 70, 219 S.W. 2d 401; Collins v. Hudson's Adm'x, 282 Ky. 810, 820, 140 S.W. 2d 365, 370. Our attention has not been called to any Kentucky cases where fees have been allowed to attorneys representing heirs under circumstances such as are present in the instant case. Accordingly, on the record presented, viewed in the light of both the Kentucky *330 law and the Treasury Regulations, we hold that petitioner is not entitled to any deduction herein for attorney fees paid to Randolph A. Brown. Decision will be entered under Rule 50. Footnotes
1. This is the spelling used in the deeds dated October 14, 1947. The parties in their stipulation of facts use "Belview," and paragraph 7 of the property settlement agreement uses "Bellview."↩
2. SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION. (b) Marital Rights Not Treated as Consideration. - For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."↩
3. SEC. 2042. PROCEEDS OF LIFE INSURANCE. The value of the gross estate shall include the value of all property - * * *
(2) Receivable by other beneficiaries. - To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *↩
4. SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES. (a) General Rule. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts - (1) for funeral expenses. (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.↩