ESTATE of Joseph L. HASKINS, Deceased, Lloyd L. Edwards and Jayne C. Haskins, Executors, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 41413.

United States District Court
N. D. California, S. D.

April 7, 1965.

Kent & Brookes, San Francisco, Cal., for plaintiffs.

Cecil F. Poole, U. S. Atty., Marvin B. Haiken, Asst. U. S. Atty., San Francisco, Cal., for defendant.

THOMPSON, District Judge.

This action was tried before the Court sitting without a jury and was submitted on the evidence adduced at the trial, the Partial Stipulation of Facts filed June 10, 1964, the Supplemental Stipulation of Facts filed November 3, 1964, and the Stipulation for Correction of Record filed December 14, 1964. The Court, having considered the evidence and the arguments and briefs of counsel, makes the following Findings of Fact:

## FINDINGS OF FACT

It is true that:

1. Plaintiffs are the Estate of Joseph L. Haskins, Deceased, and its duly appointed Executors, Lloyd L. Edwards and James C. Haskins.

2. Decedent, Joseph L. Haskins, was born on October 14, 1891. Mildred E. Haskins, the former wife of Decedent, was born on July 9, 1891. Joseph L. Haskins and Mildred E. Haskins were married at San Jose, California on February 3, 1913. Three children were born, the issue of the marriage, namely: Jayne Haskins Payne, born May 4, 1914, Nancy Haskins Stefan (formerly Montgomery), born March 7, 1922, and Joseph L. Haskins, Jr., born May 2, 1933.

3. On March 1, 1947, Joseph L. Haskins and Mildred E. Haskins entered into a property settlement agreement in connection with the obtaining of a divorce. The intent of said agreement was to accomplish a complete division, adjustment and settlement of their property rights covering both their separate and community property, a provision for the support and education of the children, provision for the future support and maintenance of the wife and provision for the custody of Joseph L. Haskins, Jr., the minor child. In their negotiations, the parties determined that the value of the accumulated community property was approximately $333,645.70, and the settlement agreement was negotiated on that premise. The settlement agreement identified certain separate property then belonging to the husband and wife, respectively, and provided for the continuance of the character of such property as the sole and separate property of the owner thereof.

4. With respect to the community property, the agreement required the husband to convey to the wife, on January 1, 1948, securities and cash having a value of $100,000, the same to become the sole and separate property of the wife, and required the wife to establish an irrevocable inter-vivos trust of such property, the income therefrom to be paid to the wife for life and the remainder to the three children in equal shares. The agreement also required the husband, on or before January 1, 1948, to dispose of $100,000 in community assets by making gifts thereof to one or more of the children or by establishing an irrevocable trust in which he could reserve the income to himself for life with remainders to the children, with the proviso that the three children should be treated substantially equally, either by way of outright gift or as remaindermen of the trust.

Incidentally, the agreement required the husband to pay the wife $250 per month for her support through December, 1947, to pay the wife's attorney fees in the amount of $1,000, to maintain life insurance in the amount of $20,000 payable to the wife as primary beneficiary and to the children as contingent beneficiaries, to pay all 1947 income taxes, to pay all obligations incurred by the husband to January 1, 1948, and to provide for the complete maintenance and education of the children. The agreement required the wife to convey to the husband, as his sole and separate property, all community property not otherwise disposed of by the agreement, and provided that from and after January 1, 1948, all such property would be the sole and separate property of the husband.

5. On March 14, 1947, Mildred E. Haskins obtained an interlocutory decree of divorce from Joseph L. Haskins in an action filed in the Superior Court of the State of California, in and for the County of Santa Clara. She obtained a final decree of divorce in said

action on March 17, 1948. On or about April 12, 1948, Mildred E. Haskins made, executed and delivered to Joseph L. Haskins deeds conveying to him her interest in various parcels of real property as required by the property settlement agreement, including those parcels which subsequently became the corpus of the so-called Home Ranch Trust. After January 1, 1948, Joseph L. Haskins, pursuant to the property settlement agreement, conveyed to his wife securities and money having a value of approximately $100,000 which subsequently became the corpus of the Mildred E. Haskins Trust. On or about May 26, 1948, Mildred E. Haskins executed an irrevocable declaration of trust, with the Bank of America National Trust & Savings Association as Trustee, to which she assigned and delivered the securities conveyed to her by Joseph L. Haskins, reserving to herself the income for life with remainders to the children in equal shares. On or about June 8, 1948, Joseph L. Haskins made, executed and delivered an irrevocable declaration of trust and conveyed to the trust certain real and personal property, reserving to himself the income for life with remainders to the three children in equal shares. This trust has been sometimes designated as the Home Ranch Trust. Joseph L. Haskins resided on the property until his death.

6. The allocation and conveyance to Joseph L. Haskins as his sole and separate property of a disproportionate share of the community property of the parties were not intended by either Joseph L. Haskins or Mildred E. Haskins as consideration for the establishment of the Home Ranch Trust, and such disproportionate share of the community property was not received by Joseph L. Haskins as consideration for the establishment of the Home Ranch Trust.

7. Joseph L. Haskins died on October 2, 1959. Plaintiffs filed an estate tax return with the District Director of Internal Revenue in which the corpus of the Home Ranch Trust was included in the gross estate of the decedent. The fair market value of the trust corpus on the date of decedent's death was $185,560.50. On June 9, 1961, plaintiffs filed a claim for refund supported by an amended estate tax return in which the value of the corpus of the Home Ranch Trust was excluded from the decedent's gross estate in the computation of the federal estate tax liability. The claim for refund was disallowed on April 23, 1963. Both the claim for refund and this suit for refund were timely. By this action, plaintiffs seek a refund of taxes paid in the amount of $56,594.87, plus interest thereon as provided by law, and also a refund of taxes paid in an amount to be determined, and additional fees and expenses incurred and to be incurred in connection with the claim and suit for refund.

8. The declared approximate value of the community property at the time of the property settlement agreement, March 1, 1947, was $333,645.70, including an estimated $4,000 for tangible personal property. The values of community real property were assigned by Joseph L. Haskins, himself a qualified real estate appraiser, and accepted by the wife. No value was assigned to the insurance agency business owned by Joseph L. Haskins. Evidence was introduced by plaintiffs from which it might be concluded that the fair market value of the community property as of January 1, 1948, the effective date of the agreement, was in fact $482,419. The increase is accounted for primarily by the greater valuations assigned to the real estate, an increase approximating $114,500 (including the interim acquisition of a one-third interest in the HCH Ranch), and by assigning a value of $26,000 to the insurance agency business.

The Court's conclusions of law are stated in the following opinion. Insofar as they may be considered findings of fact and insofar as facts are stated in the opinion which are not included in the foregoing Findings of Fact, the Court finds them to be true in all respects.

## OPINION

In 1947, Mildred and Joseph Haskins parted after thirty-four years of marriage. They entered into a separation and property settlement agreement disposing of some $333,647 in accumulated community property in which, under California law, Mildred owned a vested one-half interest (Cal.Civil Code, § 161a; Berry v. Berry, 1956, 140 Cal.App.2d 50, 294 P.2d 757). Had Mildred and Joseph Haskins continued to live in marital felicity, or even tolerance, until death did them part, they could, nevertheless, on March 1, 1947, have consummated the same division and distribution of their community property interests. Wells Fargo Bank & Union Trust Co. v. United States (9 CCA 1957), 245 F.2d 524; Woods v. Security First National Bank, 1956, 46 Cal.2d 697, 299 P.2d 657, 659. The divorce itself was legally an incident, not the essence, of the settlement agreement.

Here, as not uncommonly occurs, when faced with marital death, the parties were prompted to concern with the hereafter.

The fact that active and effective study of estate planning may occur only when the marriage itself is tottering should not serve to characterize the legal relationships in property then created simply as the result of some form of arm's length bargaining for the tangible fruits of the marriage. There is no reason to presume in any case that the imminent dissolution of a marital partnership implies that either the mother or the father has abandoned his children or has lost normal parental concern for their future well-being. The evidence here, in fact, demonstrates that both Joseph and Mildred Haskins, despite their personal differences, were genuinely and equally concerned for the three children. Why should an estate plan be considered anything else just because it is effectuated as part of a property settlement agreement between spouses who obtain a divorce? Why should these trusts be taxable if Mildred and Joseph Haskins had continued to live in conjugal felicity and not taxable because their marriage was dissolved?

Plaintiffs say it is because Joseph bested Mildred in their negotiations for a property settlement. He, the argument goes, received outright $133,647 in community property, one-half of which was already his. He also received a life estate in the $100,000 Home Ranch Trust, and Mildred received a life estate in the $100,000 Mildred E. Haskins Trust. Ergo, Mildred paid to Joseph and Joseph received $66,823 (one-half of $133,647) for setting up the Home Ranch Trust. This, then, was a "bona fide sale for an adequate and full consideration in money or money's worth" (26 U.S.C. §§ 2036, 2043), and the transfer in trust with a retained life estate falls within the parenthetical exception in Section 2036 and the trust corpus is not includable in the value of the gross estate.

The facts of this case highlight the incongruity of the argument. If the argument is accepted, the result is that the Joseph Haskins estate is not taxable with respect to the Home Ranch Trust while the Mildred Haskins estate is taxable with respect to the Mildred E. Haskins trust, for her executors would have no basis for arguing that she had "received" (26 U.S.C. § 2043[a]) any consideration to establish the trust. First National Bank of Shreveport v. United States, 1963, W.D.La., 224 F.Supp. 747, aff. 5 CCA 2/15/65, 342 F.2d 415. Thus, the spouse who obtains the bulk of the community property in marital settlement and potentially has the larger gross estate has the added benefit of non-taxability of a substantial portion thereof. When this is considered together with the claimed result that because of divorce, the children-heirs will receive property free of the burden of estate taxation which they would not have escaped if the same trust had been created by congenial parents, we think it essential to re-examine the principles governing this type of transaction.

The Internal Revenue Code taxes transfers with retained life estates

"except in case of a bona fide sale for an adequate and full consideration in money or money's worth" (26 U.S.C. § 2036[a]) to the extent of the "value of the consideration received therefor by the decedent" (26 U.S.C. § 2043). It is of the essence of a consideration that it must be bargained for and must have been intended as the thing given in exchange for the promise. Colorado National Bank of Denver v. Bohm, (9 CCA 1961), 286 F.2d 494, 496, and cases there cited. This concept is explicated in the Code language "consideration received *therefor.*" A conveyance in trust needs no consideration. Mahoney v. Crocker, 1943, 58 Cal.App.2d 196, 136 P.2d 810. Hence, the Code language refers to a special requirement of the tax laws which should be interpreted to achieve an equal, uniform and just impact of estate taxation. The consideration mentioned in Sections 2036 and 2043 of the Code is a consideration in money or money's worth intended by the parties to be paid and received expressly for the purpose of establishing the trust. We think it a fair inference from the evidence in this case that the disproportionate share of the community property allocated to Joseph L. Haskins was not paid to and received by him as consideration for the creation of the Home Ranch Trust, although it was part of the consideration for the property division and settlement of marital rights and obligations. The remainder provisions of both the Home Ranch Trust and the Mildred E. Haskins Trust were established in accomplishment of the joint and common purpose and intent of the father and mother to provide after their death for the financial well-being of their three children.

In broader perspective, it may be observed that we see little sense or justice in the interpretation of tax laws which will permit a non-taxable devolution of property to persons who are the natural objects of the testamentary bounty of both parties to a marital separation agreement under the guise that it is an arm's length bargain, commercial in character. The children, prior to the creation of the irrevocable trusts, had a mere expectancy in the common property of the father and mother. McKay v. Lauriston, 1928, 204 Cal. 557, 269 P. 519; In re Perkins' Estate, 1943, 21 Cal.2d 561, 134 P.2d 231. This was not a right, obligation or property interest arising out of the marital relation which was a normal or necessary subject of a settlement of marital affairs on divorce. A trust for the children after death of the parents is not a provision any court could have decreed in a contested judicial settlement of marital rights and obligations. The remainders to the children represent estate planning consummated in expression of the joint desires of the parents. That they were superimposed upon an agreement for the division of community property and settlement of marital rights and obligations does not change their character.

It remains to identify the settlor of the Home Ranch Trust, that is, whether the decedent made the transfer and retained the estate for life. There is a difference in the language of the settlement agreement respecting the Home Ranch Trust and the Mildred E. Haskins Trust. The former was to be established by Joseph out of $100,000 "worth of community assets", while the latter was required to be created by Mildred with specific community securities transferred to her as her sole and separate property. Plaintiffs argue, therefore, that inasmuch as Joseph owned only a one-half interest in the community property, he was the transferor and settlor of only one-half the corpus of the Home Ranch Trust. Interpreting the agreement as a whole, we cannot sustain this conclusion. It provided that after January 1, 1948, all property acquired by or conveyed to either party would be his or her sole and separate property. The noted differences in the language of the agreement do not appear to have been an intentional differentiation between the property interests created in the respective parties. Their practical interpretation of the agreement is in accord, for the absolute

conveyances by each party to the other were executed and delivered several weeks before any trusts were declared. Joseph's obligation to the children raised by the agreement was not restricted to any specific "community" assets, nor was he required to declare a trust. He could have fulfilled his obligations by outright gifts of $100,000 to the children or by a trust with a retained life estate, or partly by trust and partly by outright gifts. We conclude that the property allocated to Joseph by the agreement and conveyed to him by his wife became his sole and separate property and he was the sole settlor and transferor of interests in property transferred to the Home Ranch Trust.

We have not ignored the decisions relied upon by plaintiffs (Estate of McCoy, 20 T.C.M. 224; Past v. United States, 63–2 U.S.T.C. 90,461). We think our finding under the evidence here that the community property allocation was not intended as statutory consideration for the trusts for the children is sufficient to distinguish them.

Judgment will be entered for defendant.